PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JAMES J. LIGHTNER,

       *Plaintiff-Appellant,*

       v.

CITY OF WILMINGTON, NORTH
CAROLINA; TANDY CARTER, Acting
Chief of Police for the
Wilmington Police Department;
BRUCE HICKMAN, Interim Chief of
Police for the Wilmington Police
Department; STERLING CHEATHAM,
City Manager for the City of
Wilmington,

       *Defendants-Appellees.*

No. 07-1442

Appeal from the United States District Court
for the Eastern District of North Carolina, at New Bern.
Louise W. Flanagan, Chief District Judge.
(7:05-cv-00101-FL)

Argued: September 24, 2008

Decided: November 3, 2008

Before WILKINSON, Circuit Judge, HAMILTON,
Senior Circuit Judge, and James C. CACHERIS,
Senior United States District Judge
for the Eastern District of Virginia,
sitting by designation.

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Senior Judge Hamilton and Senior Judge Cacheris joined.

---

## COUNSEL

**ARGUED**: Stephen Edward Culbreth, CULBRETH LAW FIRM, Wilmington, North Carolina, for Appellant. Bruce Danforth Morton, HEDRICK & MORTON, L.L.P., Wilmington, North Carolina, for Appellees. **ON BRIEF:** Ashley C. Council, CULBRETH LAW FIRM, Wilmington, North Carolina, for Appellant.

---

## OPINION

WILKINSON, Circuit Judge:

The plaintiff in this case claims he faced discrimination on account of race and gender, and he appeals the district court's grant of summary judgment in favor of his employer. At the same time, he charges that his employer's action was actually an attempt to cover up the employer's own wrongdoing. In so doing, plaintiff has pleaded himself right out of court. Title VII was enacted to prohibit discrimination on the basis of race, gender, and other legislatively enumerated grounds. It is not a statute intended to police standards of general fairness in the workplace, or even to protect against the firing of an employee in order to cover up wrongdoing by an employer. If it were interpreted in such an omnibus fashion, it would dilute the noble purposes for which Congress enacted it. We thus affirm the district court's grant of summary judgment.

I.

James J. Lightner claims that he was suspended from the Wilmington Police Department in violation of Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. §§ 1981 and 1983. He is a white male who, at the time of the incident, was 53 years old and serving as a lieutenant in the Wilmington Police Department ("WPD"), where he had worked for over 25 years.

In 2003, he was promoted to Acting Division Commander of the Professional Standards Division where he was responsible for department ethics including the investigation of misconduct by WPD officers. As Acting Division Commander of the Professional Standards Division, he began an internal investigation into whether WPD officers were failing to report automobile accidents in an effort to make the city look better. Shortly after Lightner started the ethics investigation, three of the officers who were being investigated claimed that Lightner himself had committed an ethics violation—specifically, that he had pressured them into dismissing individuals' traffic tickets. Lightner concedes that on occasion he asked ticketing officers to help certain people whom they had ticketed, but maintains that he did not inappropriately pressure them.

On February 5, 2004, Acting Police Chief Tandy Carter and Acting Deputy Policy Chief Bruce Hickman informed Lightner of the ticket fixing allegations against him and placed him on paid administrative leave for three weeks so that the Human Resources Department could investigate his conduct. After the investigation, Hickman informed Lightner by letters on February 17 and 19, 2004 that he had violated various Department Rules by asking subordinate officers to fix tickets. The February 19th letter also recognized that ticket fixing was widespread in the WPD, but noted that Lightner had approached the ticketing officers as both a superior officer and as the Acting Division Commander of the Professional Standards Division. The letter went on to say that given his role in the Professional Standards Division, Lightner's conduct "should be beyond reproach for professional and ethical behavior." Accordingly, he was suspended without pay for one week until his previously announced retirement date on

March 1, 2004. Lightner appealed the suspension to City Manager Sterling Cheatham who upheld it.

Lightner then filed suit in North Carolina state court against the City of Wilmington, Acting Police Chief Carter, Acting Deputy Police Chief Hickman, and City Manager Cheatham alleging that they had discriminated against him in violation of Title VII, § 1981, and § 1983. Specifically, he alleged that by disciplining him for ticket fixing more harshly than a younger, female African American officer, they had discriminated against him on the basis of race, gender, and age. Defendants removed the case to United States District Court in the Eastern District of North Carolina.

After discovery, the defendants moved for summary judgment. The district court granted the defendants' motion over a contrary recommendation from the magistrate judge. The court concluded that plaintiff had not presented evidence from which a jury could find that any disparate treatment was the result of race or gender discrimination. Plaintiff had established only a weak prima facie case of discrimination and, moreover, had admitted that the real reason for his suspension was to halt his internal investigation into WPD officers' failure to report automobile accidents. *See Lightner v. City of Wilmington*, 498 F.Supp.2d 802 (E.D.N.C. 2007). Lightner now appeals.

## II.

Lightner claims that the district court erred in granting summary judgment for the defendants because he presented evidence under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), from which a jury could find that his suspension for ticket fixing violated Title VII.* Plaintiff argues that he

---

*Lightner does not appear to appeal the district court's grant of summary judgment on his age discrimination claim, and in any event that claim lacks merit. Lightner also does not specifically address his § 1981

presented evidence sufficient to satisfy his burdens by show-ing (1) that his conduct was similar to that of a female African American officer who was also disciplined for ticket fixing, and (2) that he was disciplined more severely for his conduct because he received an unpaid one-week suspension while she received only a paid one-day suspension—a "Decision Mak-ing Day."

As further evidence that there was a disparity in treatment, he claims that the female officer's offense was a more egre-gious violation of Department policy and that her record of service, filled with discipline problems, was much worse than his exemplary 25-year record of service in the WPD. In addi-tion, he argues that his suspension was a disproportionate punishment because, as Acting Deputy Police Chief Hickman noted in his letter, ticket fixing was widespread throughout the WPD. The plaintiff also contends that he offered sufficient evidence that the defendants' proffered nondiscriminatory reasons were pretextual. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993).

## A.

Plaintiff's claim founders on its terms. By the plaintiff's own repeated admission, the real reason for his suspension was to cover up department wrongdoing. This is not race or gender discrimination and therefore is not actionable under Title VII.

The plaintiff admitted on multiple occasions throughout this litigation that the reason for his suspension was to quash his internal investigation into WPD officers' failure to report

and § 1983 claims, but the *McDonnell Douglas* framework applies to dis-crimination claims under Title VII, § 1981, and § 1983. *See Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004). Therefore, the following analy-sis also governs his § 1981 and § 1983 claims.

automobile accidents. His admissions during litigation are binding. *See In re McNallen*, 62 F.3d 619, 625 (4th Cir. 1995) (collecting cases). In his brief before this court and in his memorandum in opposition to the defendants' motion for summary judgment, plaintiff stated his "adamant belief" that his suspension was "in direct retaliation for [his] Internal Affairs investigation into the failure of certain traffic officers to appropriately report automobile accidents." *See* Brief of Appellant at 8-9; Memorandum in Opposition of Defendants' Motion for Summary Judgment at 4, JA 202. In his deposition, the plaintiff stated his belief that his suspension was "a big conspiracy to hush me up, to get me out of the way, to make the investigation stop" and that he "was not allowed to come back to be in internal affairs in any way, shape, or form so this traffic investigation would not continue." *See* JA 103, 111.

In offering this explanation as to the real reason for the employer's action, the plaintiff has undone his case. He has tried to take a statute aimed at discrete forms of discrimination and turn it into a general whistleblower statute, which of course Title VII is not. Title VII prohibits discrimination on the basis of specifically enumerated grounds: "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (2000). Its purpose to eliminate these invidious forms of discrimination is clear. It would vitiate Congress's decision to single out these grounds as particularly deserving of protection if Title VII were interpreted as a general employment statute that protects employees from any wrongful discharge.

There is no other federal cause of action pled to support the plaintiff's claim. His claim is in the nature of a state wrongful discharge claim, which is a matter of state employment and tort law. *See, e.g.*, *Newberne v. Department of Crime Control and Public Safety*, 359 N.C. 782 (2005) (applying North Carolina Whistleblower Act, N.C.G.S. § 126-84 to -88); *Amos v. Oakdale Knitting Co.*, 331 N.C. 348 (1992) (discussing exceptions to at-will employment doctrine).

This case is analogous to *Rothmeier v. Investment Advisers, Inc.*, 85 F.3d 1328 (8th Cir. 1996), where the Eighth Circuit upheld a grant of summary judgment for the defendant on an ADEA claim where the plaintiff conceded that he was fired for investigating SEC violations by his employer. He admitted that he "was discharged because [his employer] wanted to cover up its SEC problems and keep the millions of dollars it illegally collected." *Id.* at 1337. The court held that "[t]his acknowledgment standing alone would completely refute [the plaintiff's] claim of age discrimination." *Id.* Similarly, in this case, Lightner's acknowledgement that he was fired to stop his internal investigation negates his claims of race and gender discrimination. Consequently, his suspension, however wrongful, is not actionable under Title VII and the defendants are entitled to summary judgment.

## B.

The application of the *McDonnell Douglas* framework to plaintiff's case reinforces the point that he was not discriminated against on the basis of race or gender. To establish a prima facie case a plaintiff must show "(1) that plaintiff engaged in prohibited conduct similar to that of a person of another race, color, sex, religion, or national origin, and (2) that disciplinary measures enforced against the plaintiff were more severe than those enforced against the other person." *Moore v. City of Charlotte*, 754 F.2d 1100, 1105-06 (4th Cir. 1985) (adapting the *McDonnell Douglas* framework for the employee discipline context). Lightner seeks to establish a prima facie case of race and gender discrimination by pointing to an African American female comparator whom he alleges was disciplined less harshly for more egregious violations of Department Rules. This comparison does not save plaintiff's claims.

First, the comparison is not sufficient because the two officers are not comparable. The plaintiff was the Acting Division Commander of the Professional Standards Division. He was

responsible for Department compliance with ethics rules and therefore was naturally expected to set an example by following the rules himself. In contrast, the female officer was not a member of the Professional Standards Division or even an Acting Division Commander at the time of her offenses. The similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful. *See Moore*, 754 F.2d at 1106-10 (holding that fact-finding was deficient when premised on "an unprincipled conception of 'similarity' and 'comparability,' a structural flaw"). The difference in their positions within the WPD makes the purported comparison in this case too loose.

Second, the *McDonnell Douglas* framework does not transform all instances of disparate treatment into unlawful discrimination. The framework is a means by which plaintiffs can use circumstantial evidence to create an inference of discrimination. In this case, any inferences as to race or gender that could potentially be drawn from the disparate treatment are completely undermined by the plaintiff's admission that he was suspended to stop his internal investigation. As the Supreme Court stated in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), "an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision." *Id.* at 148. Given his admission, no reasonable jury could infer that the Department disciplined the plaintiff more harshly because of his race or sex. For the foregoing reasons, the judgment is

*AFFIRMED*.