UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 15-1410

JACQUELINE K. HURST,

Plaintiff - Appellant,

v.

DISTRICT OF COLUMBIA,

Defendant - Appellee.

Appeal from the United States District Court for the District of Maryland, at Greenbelt.
Paul W. Grimm, District Judge. (8:12-cv-02537-PWG)

Argued: December 9, 2016                    Decided: March 7, 2017

Before DUNCAN, AGEE, and HARRIS, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED**: Hannah Rogers Metcalfe, METCALFE & ATKINSON, LLC, Greenville, South Carolina, for Appellant. Mary L. Wilson, OFFICE OF THE ATTORNEY GENERAL FOR THE DISTRICT OF COLUMBIA, Washington, D.C., for Appellee. **ON BRIEF**: Karl A. Racine, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, Loren L. Alikhan, Deputy Solicitor General, Office of the Solicitor General, OFFICE OF THE ATTORNEY GENERAL FOR THE DISTRICT OF COLUMBIA, Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Plaintiff, Jacqueline Hurst, appeals the district court's order granting summary judgment to the District of Columbia (the "District") in Hurst's employment discrimination suit under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and Maryland law.[1] The issue on appeal is whether Hurst has satisfied her prima facie burden to show disparate treatment based on race by identifying comparators who were similarly situated, but treated differently. Because Hurst failed to point to any valid comparators, we affirm the judgment of the district court.

I.

In November 2004, Hurst, who is Caucasian, went to work as a youth correctional officer for the District of Columbia Department of Youth Rehabilitation Services ("DYRS"). Hurst's position involved "responsibility for the rehabilitation, direct supervision and active positive engagement, and safety and security of youth in the custody of DYRS." J.A. 37. Her post required her to search for drugs and other contraband, prevent escapes, prepare written reports, maintain records, and serve as a role model for youth in the program. She was also "required to use sound judgment in interpreting and adapting

---

[1] We consider Hurst's state and federal claims together, as the Maryland Court of Appeals has deemed Maryland Fair Employment Practices Act to be the state law analogue of Title VII, and has noted that Maryland courts "traditionally seek guidance from federal cases in interpreting Maryland's [FEPA]." *Haas v. Lockheed Martin Corp.*, 914 A.2d 735, 742 (Md. 2007).

DYRS guidelines in resolving problems that a youth might be having when ensuring the safety of both [DYRS] staff and youth." J.A. 40.

Pursuant to the Child and Youth Safety and Health Omnibus Amendment Act of 2004, the District of Columbia Department of Human Resources ("DCHR") was tasked with periodically conducting background checks on DYRS employees, like Hurst. *See* D.C. Code § 4-1501.03(d). If a background check revealed certain issues, such as a felony offense, a DCHR employee would meet with the employee. If the issue could not be resolved, "DCHR sends an advance notice of removal and supporting documents to DYRS instructing the agency to begin the removal process for the employee." J.A. 117. The employee would have the option to seek administrative review of the proposed termination by a "Hearing Officer," a DYRS employee, "but the Deciding Individual, who ultimately decides whether to accept the Hearing Officer's recommendation, is a DCHR employee." J.A. 117.

On June 12, 2009, Hurst signed and gave a check for $4,700 to Dogwood Kennels where she apparently incurred charges for boarding her dog. On the memo line of the check, she wrote "Do Not Cash/IOU" and advised the kennel that her account had insufficient funds. J.A. 21, 236. Five days later, Hurst stopped payment on the check. When the kennel attempted to cash the check, the bank returned the unpaid check to the kennel.

In November 2009, when the kennel still had not received payment, Hurst was arrested and charged with stopping payment on a check for more than $500, in violation of

4

Maryland Criminal Code § 8-103(b).[2]  Shortly after Hurst's arrest, a Baltimore County police officer informed a DYRS official of the incident.  DYRS placed Hurst on leave without pay on November 26, 2009, while DCHR initiated a background investigation of her.

Hurst pleaded not guilty to the bad check charge related to the kennel.  On June 16, 2010, the Circuit Court for Baltimore County placed her on probation before judgment pursuant to section 6-220 of Maryland's Code of Criminal Procedure, which authorizes probation before judgment when "a defendant pleads guilty or nolo contendere or is found guilty of" certain crimes.  *See* Md. Code Ann., Crim. Proc. § 6-220.[3]

In September 2010, Richard Mattiello, a DCHR Compliance Manager, assessed Hurst's suitability for continued employment with DYRS, at which time he surveyed details of the bad check charges and concluded Hurst was not suitable for the position of Youth Development Representative.  He recommended to DCHR General Counsel that Hurst be removed from her job, explaining:

> Ms. Hurst has demonstrated by her conduct that she is not a fit role model for the youth committed to the custody and care of DYRS.  It has also been shown that she lacks the sound judgment needed in the position.  Finally, her honesty and truthfulness are highly questionable.
>
> The position of Youth Development Representative provides services to the District's most troubled and at-risk youth.  DYRS['s] primary mission is to assist the youth committed to its care and custody to become productive adults.  The agency can ill afford to place their clients in the custody and care of an employee who has demonstrated that she cannot be trusted.

[2] Hurst was also charged with two additional bad check offenses, which were subsequently disposed of by *nolle prosequi*.

[3] Hurst successfully completed her probation in February 2011.

J.A. 179.

DCHR issued a Notice of Proposed Adverse Action on October 5, 2010, recommending that Hurst be terminated from her post in 15 days. The notice cited the District's Personnel Regulations, which define cause for termination of employment to include an "act or omission which constitutes a criminal offense, whether or not such act or omission results in a conviction." J.A. 183. The notice specifically referenced Hurst's bad check offense and noted the criminal court's finding that Hurst was guilty as a prerequisite for the imposition of probation without judgment. The notice informed Hurst that DCHR had determined "she [wa]s not suitable and that her continued employment present[ed] a clear danger to children and youth committed to the custody and care of DYRS and undermine[d] the efficiency of the service." J.A. 174.

Hurst challenged the proposed termination by seeking administrative review of DCHR's recommendation. In accordance with the statutory authority governing the administrative appeals process for District of Columbia employees, a hearing officer at DYRS conducted the administrative review. During the administrative appeals process, Hurst admitted that she had received probation before judgment for the bad check charge, but maintained that she had not actually been found guilty of the crime. The DYRS hearing officer found that Hurst's bad check offense did not warrant termination because the verdict of probation before judgment did not amount to a conviction. Accordingly, the hearing officer recommended withdrawing Hurst's proposed termination and returning her to active duty.

6

Nonetheless, in January 2011, Camille Stillwell, Associate Director and Deciding Official for DCHR, issued a Notice of Final Decision, terminating Hurst effective February 1. According to Stillwell, the youth correction officer position required Hurst to exhibit "sound judgment . . . and document incidents truthfully and accurately," as well as "provide direct services to children and youth who are troubled and at-risk" and "serve as a role model to these youth." J.A. 251–52. "The government . . . has a right to expect that those employees entrusted with care and safety of vulnerable children and youth not be guilty of serious transgressions of the law, especially when those transgressions involve questions of dishonesty," Stillwell averred. J.A. 252. And, she noted, although Hurst pled not guilty and received probation before judgment, the court made a "finding . . . of guilt" in this "very recent case." J.A. 251. Stillwell concluded that Hurst was "not a fit role model" and "lack[ed] the sound judgment, honesty and truthfulness required for her position." J.A. 248.

Upon exhausting administrative procedures with the Equal Employment Opportunity Commission, Hurst sued the District in the District of Maryland. Hurst alleged in the complaint that her termination constituted race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and Maryland Code § 20-601, *et seq.* Hurst's amended complaint named nine African-American youth correctional officers who she claimed were similarly situated to her but not terminated when charged with or convicted of various crimes.

The District moved for summary judgment, arguing that Hurst could not establish her prima facie case of disparate treatment based upon race because the comparators she

identified were not, in fact, similarly situated. In support of its motion, the District submitted a declaration from a DYRS official describing the employment history and disciplinary circumstances for 14 DYRS employees identified in discovery. Opposing summary judgment, Hurst listed and discussed only eight alleged comparators.[4]

The district court granted summary judgment in favor of the District, holding, *inter alia*, that Hurst had not shown a similarly situated non-Caucasian employee who was treated more leniently. Of the eight comparators identified in Hurst's summary judgment response brief, four of them were not guilty of a felony, while in Hurst's case "the [state] court found that her conduct established her culpability of a felony with which she was charged, but deferred imposition of a judgment of guilt, imposing probation instead." J.A. 59. As to the remaining comparators, the disciplinary actions taken in those instances occurred more than four years prior to Hurst's and, therefore, were not temporally proximate. The district court also noted that the record did not show that the other disciplinary decisions were made by the same supervisor or, in some cases, the same agency. Ultimately, the district court concluded that Hurst failed to identify similarly situated comparators and therefore could not establish a prima facie case of disparate treatment based on race.

Hurst noted a timely appeal, and we have jurisdiction under 28 U.S.C. § 1291.

---

[4] One of the purported comparators Hurst points to in this appeal, T.G., was among those recounted in DYRS's summary judgment motion and corresponding evidence, but Hurst failed to argue in opposing summary judgment that T.G. was an appropriate comparator.

## II.

We review the district court's grant of summary judgment de novo, applying the same standard as the district court. *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 460 (4th Cir. 2012). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotation marks omitted).

## III.

Title VII makes it unlawful for an employer to "discriminate against any individual . . . because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of race discrimination under Title VII premised upon the enforcement of employee disciplinary measures, the plaintiff must show: (1) that she is a member of the class protected by Title VII, (2) that the prohibited conduct in which she engaged was comparable in seriousness to misconduct of employees outside the protected class, and (3) that the disciplinary measures enforced against her were more severe than those enforced against those other employees. *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993). Only if the plaintiff succeeds in proving a prima facie case will the burden shift to the employer, who must articulate a non-discriminatory reason for the difference in disciplinary enforcement. *Id.* Should the employer articulate such a non-discriminatory

9

reason, the burden shifts back to the plaintiff to demonstrate that the employer's reasons are not true, but instead serve as a pretext for discrimination. The plaintiff, however, always bears the ultimate burden of proving that the employer intentionally discriminated against her. *See Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *Cook*, 988 F.2d at 511.

The District does not dispute that Hurst satisfies the first prong of the prima facie test. It is on the final two prongs of the relevant inquiry that Hurst founders. She asserts that the District permitted similarly situated African-American DYRS employees to remain on staff after their background checks revealed similar – or worse – criminal offense conduct than Hurst's. The African-American DYRS employees Hurst presents as comparators, however, are not similarly situated for purposes of Title VII, and therefore her claim fails.[5]

"The similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful." *Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008). *See also Burdine*, 450 U.S. at 258 ("[I]t is the plaintiff's task to demonstrate that similarly situated employees were not treated equally."); *accord Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 17 (1st Cir. 1994); *accord*

---

[5] Plaintiffs are not required as a matter of law to point to a similarly situated comparator in order to prevail on a discrimination claim. *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 545 (4th Cir. 2003). In this case, though, Hurst has based her allegations of discrimination squarely on her contention that "similarly situated African American Youth Correctional Officers were not terminated for similar, or worse disciplinary infractions." J.A. 11. Therefore, whether the proffered comparators are similarly situated goes to the core of Hurst's prima facie case. *See Burdine*, 450 U.S. at 258 ("[I]t is the plaintiff's task to demonstrate that similarly situated employees were not treated equally.").

*Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). That showing typically includes evidence that the employees "dealt with the same supervisor, . . . [were] subject to the same standards[,] and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct." *Mitchell*, 964 F.2d at 583; *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617–18 (7th Cir. 2000) (noting that proper comparator deals with same supervisor, is subject to same standards as plaintiff, and engages in similar conduct), *overruled on other grounds by Ortiz v. Werner Enters.*, 834 F.3d 760 (7th Cir. 2016). "The most important variables in the disciplinary context, and the most likely sources of different but nondiscriminatory treatment, are the nature of the offenses committed and the nature of the punishments imposed." *Moore v. City of Charlotte*, 754 F.2d 1100, 1105 (4th Cir. 1985).

None of the comparators that Hurst discusses on appeal were similarly situated to her. Two of the comparator DYRS employees Hurst identified—M.F.[6] and A.R.—are dissimilar because their background checks revealed only criminal offenses that predated their employment at DYRS, while Hurst was found guilty of a felony while she was an employee for DYRS.

Another proposed comparator, D.C., committed a retail theft crime in 2005 that was revealed in a background check in 2010. DCHR concluded that D.C. had shown rehabilitation by not being arrested during the interim years and imposed a nine-day suspension without pay. D.C. is dissimilar to Hurst, who had no similar period of

---

[6] We identify the proposed comparators by their initials in order to protect their privacy.

11

rehabilitation following the disposition of her felony charge. *See Radue*, 219 F.3d at 617–18 (observing that appropriate comparator must engage in similar conduct without differentiating or mitigating factors that would distinguish employer's treatment).

Other proposed comparators—P.R. and S.S.—also lack hallmarks of similarity because they had no similar finding of guilt as to their alleged offenses. P.R. was cleared when a routine criminal background check conducted by DCHR revealed no findings of culpability or prior convictions. And while DYRS considered terminating S.S. based on child abuse and neglect findings that predated her employment, there is no evidence in the record that S.S. was ever arrested, much less found guilty of a felony. Hurst, by contrast, was found culpable of the bad check offense and received probation before judgment pursuant to section 6-220 of the Maryland Code of Criminal Procedure, which authorizes probation before judgment when "a defendant pleads guilty or nolo contendere or is found guilty of" certain crimes. Md. Code Ann., Crim. Proc. § 6-220.

As to two other proposed comparators—M.T. and R.B.—the record was devoid of evidence as to the outcome of any administrative action taken, including whether they were retained by DYRS. This failure of proof precludes meaningful comparison. *See Lightner*, 545 F.3d at 265.

Hurst also argues that T.G. is a valid comparator, but she failed to present T.G. as a comparator during summary judgment proceedings in the district court. Hurst cannot raise T.G. on appeal as a representative comparator when she failed to make that claim below. *See United States v. Lavabit, LLC (In re Under Seal)*, 749 F.3d 276, 285 (4th Cir. 2014) ("When a party in a civil case fails to raise an argument in the lower court and instead raises

12

it for the first time before us, we may reverse only if the newly raised argument establishes fundamental error or a denial of fundamental justice." (internal quotation marks omitted)). This Court does not consider issues not raised before the district court unless exceptional circumstances exist such that "refusal to consider the newly-raised issue would be plain error or would result in a fundamental miscarriage of justice." *Muth v. United States*, 1 F.3d 246, 250 (4th Cir. 1993). *See also Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("Absent exceptional circumstances, a federal appellate court does not rule on issues that are not presented to the district court."). In its summary judgment motion below, the District described fourteen potential comparators, including T.G., explaining why none qualified as similarly situated to Hurst. In her response, Hurst did not mention T.G., nor did she argue that T.G.'s circumstances supported her disparate discipline claim. On appeal, Hurst seeks to avail herself of comparison to T.G., but makes no effort to show an exceptional circumstance exists to overcome waiver of this point. Simply put, we decline to consider a potential comparator not actually raised before the district court.[7]

---

[7] Even so, T.G.'s circumstances bear notable differences from Hurst's. For instance, T.G.'s disciplinary action arose ten months after Hurst's termination, T.G. was not convicted of a crime, and T.G. was disciplined by a different official than Hurst. "A plaintiff seeking to establish a prima facie case by relying on a broad history of disciplinary enforcement cannot fairly claim that an inference of racial discrimination should be drawn from one factual circumstance taken out of the context of the disciplinary treatment generally afforded by the employer for conduct similar to that of the plaintiff." *Cook*, 988 F.2d at 511. T.G.'s circumstance is too dissimilar to qualify as similar in all relevant respects. *Cf. McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973) ("Especially relevant to such a showing would be evidence that white employees involved in acts against petitioner of comparable seriousness . . . were nevertheless retained or rehired."); *Mitchell*, 964 F.2d at 583 (stating that comparators are not "similarly situated" with the plaintiff unless the comparators "have been subject to the same standards and have engaged in the same conduct [as the plaintiff] without . . . differentiating or mitigating circumstances").

13

Another significant factor precludes all of the individuals addressed by Hurst in this appeal from being true comparators: Hurst has failed to point to any evidence that the same decision-maker who made Hurst's disciplinary decision, Director Stillwell, was involved in any of the disciplinary determinations subject to comparison. For her part, Hurst admits that the similarity determination "normally entails a showing that the two employees dealt with the same supervisor[.]" Opening Br. 19 (internal quotation marks omitted). Indeed, "[w]hen different decision-makers are involved, two decisions are rarely similarly situated in all relevant respects." *Stanback v. Best Diversified Prods., Inc.*, 180 F.3d 903, 910 (8th Cir. 1999); *accord Mitchell*, 964 F.2d at 583 ("Thus, to be deemed 'similarly situated', the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor[.]"). "Different employment decisions, concerning different employees, made by different supervisors, are seldom sufficiently comparable to establish a prima facie case of discrimination for the simple reason that different supervisors may exercise their discretion differently." *Radue*, 219 F.3d at 618. This failure of proof alone is sufficient to negate Hurst's assertion that she is similarly situated to the proposed comparators, thus precluding her claim.[8]

---

[8] We observe, also, that the disciplinary circumstances of the comparators all involve decisions made from seven months to many years apart from Hurst's termination. This temporal remoteness further undermines a finding that they are similarly situated. *See, e.g.*, *Bryant*, 333 F.3d at 546 (concluding proposed comparator was not similarly situated where the employee "was not hired until several months after Bryant filed charges of racial discrimination"); *Lee v. Kansas City So. Ry.*, 574 F.3d 253, 259 (5th Cir. 2009) ("Employees . . . who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated.").

14

For these reasons, there are simply not "enough common features between the individuals to allow [for] a meaningful comparison[.]" *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 405 (7th Cir.2007), *aff'd on other grounds*, 553 U.S. 442 (2008). Because Hurst failed to forecast sufficient evidence to make a prima facie showing, the district court did not err in finding "no disparity of treatment from which one could conclude that [Hurst's] discipline was a product of racial discrimination." *Cook*, 988 F.2d at 511.

IV.

Hurst also contends that the district court erred in determining that she had expressly waived a hostile work environment claim and "in not considering direct evidence of race discrimination." Opening Br. 34. "Hostile environment claims are different in kind from discrete acts [of disparate treatment]. Their very nature involves repeated conduct . . . . [And they] are based on the cumulative effect of individual acts." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002); *see also Chacko v. Patuxent Inst.*, 429 F.3d 505, 511 n.2 (4th Cir. 2005) ("[D]iscrete acts of discrimination . . . are clearly not allegations of a hostile work environment."). And a plaintiff may not amend her complaint via briefing. *See Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir.1988) ("It is one thing to set forth theories in a brief; it is quite another to make proper allegations in a complaint."); *Car Carriers Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) (accord). Hurst's argument on a hostile work environment claim goes to a claim that she never raised and is, therefore, waived. *See Holland v. Big River Minerals Corp.*, 181 F.3d 597, 605 (4th Cir. 1999) ("Generally, issues that were not raised in the

15

district court will not be addressed on appeal."). The district court did not address these allegations because the only two claims in Hurst's amended complaint are race discrimination under Maryland law and Title VII. She did not set out a distinct claim based on hostile work environment before the district court. Thus, the district court did not err in declining to consider Hurst's extra theory, which was not properly pled.[9]

## V.

For the aforementioned reasons, we affirm the district court's grant of summary judgment to the District.

*AFFIRMED*

---

[9] In any event, none of the alleged direct evidence goes to the state of mind of the decisionmaker or the decisional process, and it is therefore not germane to the issues before us. "[S]tatements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself do not suffice to satisfy the plaintiff's burden of proving discrimination." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 286 (4th Cir. 2004) (en banc) (internal alteration and quotation marks omitted).