**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 19-2127**

_____

KYLE DAWSON,

        Plaintiff - Appellant,

    v.

WASHINGTON GAS LIGHT COMPANY; DENNIS SAMUEL; KEVIN GORDON,

        Defendants - Appellees.

_____

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, Senior District Judge. (1:18-cv-00971-CMH-JFA)

_____

Argued: May 4, 2021                                Decided: July 13, 2021

_____

Before WILKINSON, WYNN, and HARRIS, Circuit Judges.

_____

Affirmed by unpublished opinion. Judge Wynn wrote the opinion, in which Judge Wilkinson and Judge Harris joined.

_____

**ARGUED:** Patricia Armstrong Randle, RANDLE & RANDLE ATTORNEYS AT LAW, LLC, Greenbelt, Maryland, for Appellant. Lincoln Owens Bisbee, MORGAN LEWIS & BOCKIUS, LLP, Washington, D.C., for Appellees. **ON BRIEF:** Alex S. Gordon, Associate General Counsel, WASHINGTON GAS LIGHT COMPANY, Washington, D.C., for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit.

WYNN, Circuit Judge:

Kyle Dawson, a former employee of Washington Gas Light Company ("Washington Gas"), sued Washington Gas and two of his former supervisors (collectively, "Defendants") alleging race and color discrimination, unlawful retaliation, and the creation of a hostile work environment, in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Dawson appeals from the district court's entry of summary judgment in favor of Defendants on each of his claims. We affirm.

I.

A.

In reviewing an award of summary judgment, we "state the facts and draw all reasonable inferences in the light most favorable to [Dawson], the nonmoving party." *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 115 (4th Cir. 2021) (citing *Smith v. Collins*, 964 F.3d 266, 274 (4th Cir. 2020)).

In January 2007, Dawson began working at Washington Gas, a "regulated natural gas distribution utility." J.A. 54.[1] During the period relevant to this matter, Washington Gas had a labor contract with Local Union No. 96—a union affiliated with the International Brotherhood of Teamsters. As a union member, Dawson's employment was governed by that labor contract.

Under the contract's "Disciplinary Action Guidelines," employees were subject to a progressive, five-step discipline structure where "[t]he actual step (level of action) taken"

___

[1] Citations to "J.A. __" refer to the Joint Appendix filed by the parties in this appeal.

was based on "the nature of the current incident as well as the employee's prior record." J.A. 180–81. At the first step, employees were disciplined with a written reprimand. Infractions occurring under step two and step three could result in both a written reprimand and a two-day (step two) or five-day (step three) suspension. Step-four infractions resulted in a final disciplinary warning and a ten-day suspension. Finally, an infraction under step five led to termination. However, previous infractions did not always result in more severe punishment for subsequent infractions because under the contract, an employee on a given step of discipline dropped one step "every [twelve] months that the employee d[id] not incur an additional step of discipline." J.A. 181.

It appears that Dawson kept a clean disciplinary record until 2013, when he was a crew leader in training through Washington Gas's Crew Leader Development Program, an "18-month program consist[ing] of classroom and field activities for participants as 'trainees.'" Opening Br. at 5. His supervisor in the program was Robert Surdam.

According to Dawson, his relationship with Surdam was "neutral" until Surdam saw a photo of Dawson's mother—who is white—and learned that Dawson was biracial because his father is African American. J.A. 768. Dawson alleged that thereafter, Surdam—who is white—directed his anger regarding his own daughter's interracial relationship towards Dawson.

Dawson's relevant disciplinary troubles commenced on June 28, 2013, when Surdam issued Dawson a first-step disciplinary action for excessive tardiness. An "Employee Performance Discussion Tracking Log" reflects that Dawson was late on at least twelve occasions between February 2012 and his reprimand on June 28, 2013. J.A.

586–87. But while Dawson received a written reprimand for arriving late, it appears that two other monoracial Washington Gas employees evaded discipline for tardiness. One employee—an African American man—was late "numerous times," yet he "never received any discipline at all." J.A. 847. And Surdam told the other employee—a white man—to "go around back" when he was late so that "no one w[ould] see [him] come in late." *Id.*

Surdam took second-step disciplinary action against Dawson on August 14, 2013 for Dawson's involvement in an "avoidable accident" the previous month. J.A. 578–79. A description of the accident, memorialized in a "Vehicle Accident Investigation Report," states: "As [Dawson] changed from [the] left to [the] right lane to make a right-hand turn, he collided with [an]other vehicle that was traveling in the right lane." J.A. 581. Dawson received a written reprimand and a two-day suspension.

A little over a month later, on September 25, 2013, Dawson received a third-step disciplinary action for failing to follow Washington Gas procedures and policies, resulting in yet another written reprimand and a five-day suspension. The offense summary stated that "[o]n Friday August 3, 2013 [Dawson] was using the back-hoe to dig a gas leak," when he "struck a water service causing a water leak." J.A. 571. And while it appears that the water-service line was not marked, the report stated that "there was clear evidence of a water service where he was machine digging," that "[t]he water meter box was approximately eight (8) feet in front of the back hoe," and that Dawson had previously

4

"been informed about locating all facilities before digging." *Id.* Upon receiving a third-step disciplinary action, Dawson was removed from the Crew Leader Development Program.[2]

After his removal from the leadership program, Dawson worked as a crew mechanic under the supervision of Joseph Dobbins. Although he gained a new supervisor, Dawson's disciplinary troubles continued. On November 20, 2013, he received a fourth-step disciplinary action for failing to timely report an incident involving a company vehicle. The disciplinary action form reports that while exiting the fleet parking garage, Dawson swiped his ID to raise the exit gate, and as he was exiting, the gate lowered and struck his vehicle. But rather than report the incident, Dawson inspected his vehicle for damage, and finding none, went about his business.

After making multiple complaints to Washington Gas's human resources department about harassment and discrimination, Dawson filed a charge with the Equal Employment Opportunity Commission on March 28, 2014. Despite Dawson's multiple reprimands, both his 2013 year-end review from Surdam and his 2014 mid-year review from Dobbins rated Dawson's overall work performance as "Meets Requirements," which was the second-highest rating behind "Exceeds Requirements." J.A. 589, 594.

Some time would pass before Dawson's disciplinary issues resumed. Thus, pursuant to the Union's contract with Washington Gas requiring the reduction in steps after the

---

[2] Dawson eventually filed a grievance related to his third-step discipline, and in September 2014, following a meeting between Washington Gas management and the Union representative, Dawson's discipline for striking a water service line was overturned and he received back pay from his five-day suspension.

passage of time, Dawson's disciplinary record reduced down to step one by the time he received his next disciplinary action in August 2017.

From November 2016 through July 2018, Defendants Dennis Samuel and Kevin Gordon were Dawson's first- and second-level supervisors, respectively. On August 16, 2017, Samuel ordered that Dawson receive a second-step disciplinary action and two-day suspension for poor job performance and failure to follow policies and procedures. Specifically, Samuel disciplined Dawson for failing to report directly to the location of an emergency gas leak that he had been assigned to address and stopping for breakfast on his way to the location.

On June 6, 2018, Dawson filed a second charge with the Equal Employment Opportunity Commission. Less than a month later, on July 3, Samuel issued Dawson a third-step disciplinary action and imposed a five-day suspension for falsifying company documents and failing to follow policies and procedures related to paid time off. Although Dawson's paid time off request was initially denied by the scheduler, the record shows that a supervisor was willing to approve his request if Dawson could secure coverage from an eligible employee, that is, an employee who was not already working that day and would not work seven consecutive days if they picked up Dawson's shift. Dawson claims on appeal that he found a coworker to cover his shift, received supervisory approval for the coverage, and was not required to submit any forms confirming his time off. Dawson also received a fourth-step disciplinary action that very same day for running a red light while operating a company vehicle, which resulted in a final disciplinary warning and a ten-day suspension.

6

Dawson's return from his combined fifteen-day suspension was short-lived. On July 24, 2018, Dawson received a fifth-step disciplinary action for violating company policy by disconnecting the DriveCam video recording device in company vehicles on sixteen different occasions between May 29 and June 21, 2018. In accordance with the progressive discipline plan established in the labor contract, Dawson's employment with Washington Gas was terminated upon the July 24 fifth-step disciplinary action.

B.

On August 6, 2018, Dawson filed a five-count Complaint alleging discrimination, harassment, and creation of a hostile work environment based on race, in violation of Title VII (Count I—Washington Gas); discrimination, harassment, and creation of a hostile work environment based on color, in violation of Title VII (Count II—Washington Gas); unlawful retaliation, in violation of Title VII (Count III—Washington Gas); race discrimination and a hostile work environment, in violation of 42 U.S.C. § 1981 (Count IV—all Defendants); and unlawful retaliation, in violation of 42 U.S.C. § 1981 (Count V—all Defendants).

The parties submitted written stipulations of uncontested facts in accordance with the district court's Scheduling Order. Defendants then moved for summary judgment. Because Dawson did not produce direct evidence of discrimination or retaliation, the district court considered the summary judgment motion in light of the three-step, burden-shifting scheme articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Resolving all disputed facts in Dawson's favor, the district court found that Dawson made out *prima facie* claims of discrimination and retaliation. But after Defendants came forward

with legitimate nondiscriminatory and nonretaliatory justifications for their actions, the district court found that Dawson failed to show that those reasons were pretextual. The district court also found that Dawson could not make out *prima facie* hostile work environment claims. Thus, the district court granted Defendants' motion for summary judgment. Dawson timely filed a notice of appeal.

## II.

This Court reviews an award of summary judgment *de novo. Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223 (4th Cir. 2019). In conducting our review, we apply the same standard as the district court, *Goodman v. Diggs*, 986 F.3d 493, 497 (4th Cir. 2021), and ask "whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," *Reyazuddin v. Montgomery Cnty.*, 789 F.3d 407, 413 (4th Cir. 2015) (internal quotation marks omitted). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if proof of its existence or non-existence would affect disposition of the case under applicable law . . . [and] [a]n issue of material fact is genuine if the evidence offered is such that a reasonable jury might return a verdict for the non-movant." *Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) (internal citation and quotation marks omitted).

The Court not only construes the evidence in the light most favorable to Dawson, but also draws all reasonable inferences in his favor. *Haynes*, 922 F.3d at 223. And yet, "there must be 'sufficient evidence favoring [Dawson] for a jury to return a verdict for

8

[him]. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.'" *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)).

A.

Dawson argues that Defendants were not entitled to judgment as a matter of law. In bringing his Title VII and 42 U.S.C. § 1981 claims, Dawson did not allege direct evidence of discrimination or retaliation but instead relied on the *McDonnell Douglas* burden-shifting framework to show that Defendants engaged in discrimination and retaliation. He also argued that Defendants' race-based discrimination created a hostile working environment.

"Title VII [of the Civil Rights Act of 1964] forbids (i) employment practices that discriminate against an employee on the basis of race, color, religion, sex, or national origin, and (ii) retaliation against an employee for opposing adverse actions that she reasonably suspects to be unlawful under Title VII." *Strothers v. City of Laurel*, 895 F.3d 317, 326–27 (4th Cir. 2018) (internal citations omitted). And § 1981 guarantees "[a]ll persons . . . the same right . . . to make and enforce contracts," 42 U.S.C. § 1981(a), and creates a cause of action for those aggrieved by an employer's racial discrimination or retaliation, *see Gary v. Facebook, Inc.*, 822 F. App'x 175, 179 (4th Cir. 2020) (unpublished but orally argued) (citing *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459–60 (1975)). When a plaintiff asserting discriminatory treatment or retaliation under Title VII or § 1981 fails to allege direct evidence of discrimination, they may avoid summary judgment by successfully proceeding under the burden-shifting framework established in

9

*McDonnell Douglas Corp. v. Green. See Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016).

Under this framework, a plaintiff must first demonstrate a *prima facie* case of discrimination or retaliation. *McDonnell Douglas*, 411 U.S. at 802. If the plaintiff succeeds, then the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the adverse action. *Id.* "This burden is one of production, not persuasion; it can involve no credibility assessment." *Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 725 (4th Cir. 2019) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). If the employer meets this burden of production, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the defendant's articulated reasons are pretextual. *Id.* at 726. To satisfy this burden, a plaintiff may rely on evidence showing, for example, that an employer's proffered nondiscriminatory justification for its adverse action is false or inconsistent over time. *E.E.O.C. v. Sears Roebuck & Co.*, 243 F.3d 846, 852–53 (4th Cir. 2001). Despite this burden-shifting framework, "[t]he ultimate burden of persuading the trier of fact remains with the employee at all times." *Westmoreland*, 924 F.3d at 726 (internal quotation marks omitted).

1.

Dawson identifies the following adverse actions as supporting his discrimination claims: (1) his written reprimand for tardiness; (2) his reprimand for an avoidable accident; (3) his reprimand for striking a water service line (which was later overturned); (4) his reprimand for failing to timely report the incident involving the garage exit gate striking his vehicle; and (5) his reprimand for failing to follow Washington Gas's policy on paid

time off. Despite recognizing that the record was "unclear" as to some facts asserted by Dawson, the district court, "in order to resolve any disputed facts in [Dawson's] favor," held that there "could be an inference of discriminatory intent behind the disciplinary actions taken by [Defendants]." J.A. 1324–25. As such, the court held that Dawson established a *prima facie* claim for discrimination, and the burden shifted to Defendants to articulate legitimate and nondiscriminatory reasons for the adverse actions referenced above. Like the district court, we assume for present purposes that Dawson has set out a *prima facie* discrimination claim.

For each of the listed reprimands, Defendants have produced evidence showing that Dawson violated a specific Washington Gas policy, resulting in the disciplinary action taken. The burden here is merely one of production, not persuasion, and this is enough to satisfy Defendants' burden as to the reprimands. As such, the burden shifts back to Dawson to show by a preponderance of the evidence that Defendants' reasons were merely pretext for discrimination.

Again, to demonstrate pretext, Dawson may show, for example, that the nondiscriminatory reasons for the adverse actions are false or inconsistent over time. *Sears Roebuck & Co.*, 243 F.3d at 852–53. He might also identify comparator evidence, that is, "evidence that other employees who were similarly situated to [him] (but for [race or color]) were treated more favorably." *Laing v. Fed. Express Corp.*, 703 F.3d 713, 719 (4th Cir. 2013). However, Dawson must make any showing of pretext by a preponderance of the evidence, which "requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence." *Salem v. Holder*, 647 F.3d 111, 116 (4th Cir. 2011)

(internal quotation marks omitted). At this third *McDonnell Douglas* step, we may consider both Dawson's evidence establishing a *prima facie* discrimination claim and the remaining evidence in the record to determine whether Defendants' articulated reasons were merely pretext for discrimination. *See Westmoreland*, 924 F.3d at 727 (citing *Reeves*, 530 U.S. at 143).

We agree with the district court that Dawson has not satisfied his burden to show that Defendants' justifications were pretextual. For each of the adverse employment actions, we assume that Defendants knew that Dawson was biracial. But for each disciplinary action, Dawson's evidence of pretext is substantially the same as the evidence he relies on at the *prima facie* stage to create an inference of discrimination: that Defendants knew he was biracial, and as a result, he received discipline for incidents that other, monoracial Washington Gas employees were not reprimanded for. This evidence certainly creates an inference of discrimination. But could a jury reviewing this evidence, on its own, find by a preponderance of the evidence that Defendants' justifications were merely a cover-up for discrimination? Or, in other words, could a jury find it more probable than not that Defendants' proffered reasons were merely an excuse to distract from their discriminatory motives? *See, e.g.*, *Salem*, 647 F.3d at 116 (setting out preponderance-of-the-evidence standard). We do not think so.

First, we note that Defendants' justifications for Dawson's reprimands have remained consistent prior to and throughout this litigation. This is important because the facts that an employer "never changed its story" and that its "explanation has been

consistent from the moment" it took an adverse action tend to support its argument that it did not act pretextually. *Holland*, 487 F.3d at 217 n.7.

Further, Dawson has failed to produce evidence showing, for example, that Defendants are being untruthful. And, his identified evidence does not undermine Defendants' justifications. Dawson does *attempt* to identify comparators regarding his first-step disciplinary action for tardiness—directing the Court to an African American employee who was late "numerous times," but "never received any discipline," J.A. 846–47, and a white employee who was coached on how to evade being caught for tardiness—but he fails to point to sufficient evidence on which a reasonable jury could compare him to those colleagues.

"The similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful." *Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008). And relevant evidence typically includes "evidence that the [employees] dealt with the same supervisor, [were] subject to the same standards[,] and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Haynes*, 922 F.3d at 223–24 (internal quotation marks omitted).

Dawson does claim that these similarly tardy coworkers also worked under Surdam and that they faced more lenient discipline than he did. But he does not account for mitigating circumstances or explain away distinguishing facts that contrast his situation with those of his coworkers. For example, Surdam testified in his deposition that the African American employee had extenuating circumstances—he was a single father who,

at times, had issues securing childcare—and that he called every time he was going to be late. Dawson has not produced any evidence that he called to inform Surdam when he was going to be late. And as for the white employee who Surdam told to go around back to evade discipline for tardiness, Dawson concedes that he *himself* evaded discipline and instead received counseling from Surdam about his tardiness the first time he was late.

Missing here is evidence—evidence Dawson has the burden of producing—that the white employee routinely evaded discipline or that his disciplinary record was such that he should have been disciplined in the same manner as Dawson. On the evidence provided, we conclude that no reasonable jury could compare Dawson's circumstances with those of his colleagues and distill out discrimination as the intent behind Defendants' actions.

Dawson also attempts to create a jury issue by identifying several factual issues that he contends are in dispute. Relevant to his pretext argument, he argues that the district court erred when it found that it was unclear whether Dawson's supervisors directed racist comments at him, and that it was unclear whether Dawson "was treated more harshly than all other employees or only those outside his protected class."[3] J.A. 1324–25. We agree that these factual issues, resolved in Dawson's favor, might support a finding that discrimination led to Defendants' actions. But at the summary judgment stage, we are

---

[3] Dawson points to other alleged factual disputes, as well, but does not explain why they are material.

14

concerned with evidence rather than arguments. And we conclude that the evidence in the record does not create a genuine dispute as to these facts.[4]

To show that Surdam directed racist comments at him, Dawson relies on an affidavit submitted by his coworker in support of Dawson's Equal Employment Opportunity Commission claim. But while the coworker averred that he heard Surdam "make offensive racist remarks regarding [Dawson]," he could not remember the comments that were made. J.A. 979. Dawson also relies on the testimony of another coworker to show that he was disciplined more severely than employees outside of his protected classes. But all that coworker said was that in the coworker's view, Surdam treated Dawson as "fair game" because he is biracial. J.A. 992.

In showing that a genuine dispute exists, Dawson cannot rely on "[u]nsupported speculation," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (citation omitted), "the building of one inference upon another," *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 204 (4th Cir. 2016) (citation omitted), or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249–50. And "the mere existence of a scintilla of evidence" or "conclusory allegations or denials, without more" are not enough to demonstrate a genuine dispute of material fact. *Sedar v.*

_____

[4] In our *de novo* review, we do not see the record as "unclear," but instead find it unmistakable that no genuine dispute exists. In drawing all reasonable inferences in Dawson's favor, the district court stepped too far and gave Dawson more benefit than was appropriate. Accordingly, the district court erred in its findings. But "we may affirm a grant of summary judgment on any ground that the law and the record permit," *Hodgin v. UTC Fire & Sec. Ams. Corp.*, 885 F.3d 243, 251 n.3 (4th Cir. 2018) (cleaned up), and we do so here.

15

*Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021) (internal quotation marks omitted). Dawson's cited evidence strikes as conclusory and is not significantly probative to the allegations at issue. We conclude that Dawson has failed to raise genuine disputes of material fact as to pretext.

Accordingly, and with full respect for the jury's role as a factfinder, we do not believe a reasonable jury could find that sufficient evidence exists in this record to show pretext by a preponderance of the evidence. Thus, summary judgment was proper.

2.

Dawson's retaliation claims face the same fate. Dawson claims he engaged in protected activity—specifically, complaining about unlawful treatment and filing a claim with the Equal Employment Opportunity Commission—and that as a result, Defendants took several adverse actions against him. The alleged adverse actions were: (1) his reprimand for failing to promptly report to the site of a gas leak; (2) his reprimand for taking paid time off without proper approval; (3) his reprimand for running a red light in a company vehicle; (4) his reprimand for disconnecting his vehicle's DriveCam video recorder; and (5) his termination. The district court found that Dawson established a *prima facie* claim of retaliation. We assume the same for purposes of this appeal.

The burden thus shifts to Defendants to articulate legitimate and nonretaliatory reasons for taking these adverse actions. As with the discrimination claims, Defendants rely on disciplinary records in evidence to argue that the adverse actions were warranted because Dawson violated specific Washington Gas policies, and that the discipline imposed on Dawson was in line with the progressive discipline scheme set forth in the

union contract. We find that this is enough to satisfy Defendants' burden of producing evidence supporting a legitimate and nonretaliatory justification. As such, the burden shifts back to Dawson to demonstrate by a preponderance of the evidence that these justifications are actually pretext for retaliation.

Absent from this record is evidence establishing that Defendants' justifications for their adverse actions are false and that the real reason for the adverse actions was retaliation. Dawson notes that several adverse actions were taken in close temporal proximity to his complaints about unfair treatment and his notifying Washington Gas about his claim with the Equal Employment Opportunity Commission. Specifically, Dawson claims that his August 16, 2017 second-step disciplinary action for failing to timely report to a gas leak on August 2 was in fact retaliation for a tense conversation he had with Samuel on August 7.[5] He also notes that his July 3, 2018 third- and fourth-step disciplinary actions and his July 24 termination came within weeks of when Washington Gas learned of his second charge with the Equal Employment Opportunity Commission on either June 6 or June 7.

The district court correctly found that such temporal proximity can inform whether an inference of retaliation exists at the *prima facie* stage. *See, e.g.*, *Waag v. Sotera Def. Sols., Inc.*, 857 F.3d 179, 191–92 (4th Cir. 2017) (considering temporal proximity at the *prima facie* stage of the *McDonnell Douglas* burden-shifting framework); *Watkins v. Pro.*

---

[5] Dawson's description of this conversation has shifted over time. He initially stated that it happened on August 18—two days *after* the disciplinary action. He later "amended his responses to say that the conversation happened on August 7." J.A. 1331.

*Sec. Bureau, Ltd.*, 201 F.3d 439, at \*5–6 (4th Cir. 1999) (per curiam) (same). But, while proximity certainly can also play a role in demonstrating pretext,[6] Dawson has pointed to no additional evidence in the record to rebut Defendants' legitimate, nonretaliatory justifications, and the proximity was not close enough to bear the load on its own in this case. Because no reasonable jury reviewing the evidence in this record could find for Dawson, summary judgment was appropriate.

3.

Finally, Dawson argues that the district court erred in finding that Defendants were entitled to judgment as a matter of law on Dawson's hostile work environment claim. "A hostile environment exists '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (en banc) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). To prove a hostile work environment claim under either Title VII or § 1981, a plaintiff "must show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's [protected status]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to

---

[6] The district court appeared to limit evidence of proximity to the *prima facie* stage. The court found evidence of proximity "unimportant" at the third stage of the *McDonnell Douglas* burden-shifting framework, stating that Dawson must rebut Defendants' nondiscriminatory justifications with "evidence of pretext and actual retaliation." J.A. 1332. But "'the trier of fact may still consider the evidence establishing the plaintiff's *prima facie* case' at the final *McDonnell Douglas* stage." *Westmoreland*, 924 F.3d at 727 (citing *Reeves*, 530 U.S. at 143).

create an abusive work environment; and (4) which is imputable to the employer." *Id.* (quoting *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011)).

Dawson alleges that he was harassed, made fun of, and yelled at by his supervisors—assertions of unwelcome conduct that we assume are true for purposes of this appeal. However, he immediately faces an insurmountable hurdle on the next element of his claim. Dawson cannot show that the unwelcome conduct directed at him was based on his race or color. "Title VII does not prohibit all verbal or physical harassment in the workplace—it is directed only at actions that occur *because of* one of the protected statuses." *Strothers*, 895 F.3d at 329 (emphasis added) (internal quotation marks omitted). Dawson repeatedly claims that he was harassed because of his race and color, but at summary judgment, unsupported assertions are not enough. Dawson fails to cite record evidence that a reasonable jury could rely on in finding that Defendants' unwelcome conduct towards him was based on his race or color. Accordingly, the district court properly found that Defendants were entitled to judgment as a matter of law.

B.

Dawson also maintains that the district court erroneously dismissed his case without making any factual findings or legal conclusions on his Title VII color discrimination claim. Color discrimination gives rise to a cause of action distinct from race discrimination, and either (or both) can be brought under Title VII. *See Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132–33 & n.5 (4th Cir. 2002) (distinguishing between the plaintiff's race

discrimination claims and his color discrimination claims, which "arise[] when the particular hue of the plaintiff's skin is the cause of the discrimination").

In the district court's order awarding summary judgment, it acknowledged that Dawson raised a standalone color discrimination claim under Title VII. When applying the *McDonnell Douglas* burden-shifting framework, the district court noted that Dawson claimed he was "discriminated against because of both his race and his color," but ultimately found Dawson's claims lacking because he "did not directly address the legitimate, nondiscriminatory reasons produced by Defendants." J.A. 1322, 1330. And the district court later found that Dawson was "unable to show that race, *color*, or retaliation" supported his hostile work environment claim. J.A. 1336 (emphasis added). While the district court did not parse out race discrimination and color discrimination into different sections of its opinion, we are satisfied that it adequately considered Dawson's claim and established findings of fact and conclusions of law that allow this Court to conduct a meaningful review. Accordingly, there was no error.

## III.

For the reasons set forth above, the district court's order granting summary judgment to Defendants is

*AFFIRMED.*