Reversed and remanded by unpublished PER CURIAM opinion.
Judge WILKINSON wrote a separate dissenting opinion.
Unpublished opinions are not binding precedent in this circuit.
PER CURIAM:
Tiffanye Wesley (“Wesley”), who is an African-American female, began her career as a firefighter with the Arlington County Fire Department (“Department”) in 1994. After several years’ experience riding a fire truck, serving as a training center instructor and in other administrative roles, Wesley began the process of competing within the Department for the position of Captain. Although she met all of the minimum objective criteria to be eligible for promotion, and had twice passed both a written test and an experiential assessment designed to simulate the challenges faced by a Captain, the Department Fire Chief did not promote her.
Following denial of these promotions, Wesley filed an internal grievance, a complaint with the Equal Employment Opportunity Commission (“EEOC”), and, ultimately, this action, claiming that the Department had denied her the promotions based on race and gender in violation of Title VII of the Civil Rights Act.
The district court granted the Department’s motion for summary judgment, holding that Wesley had not produced sufficient evidence under the first prong of the burden-shifting framework in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to support a prima facie case of discrimina *777 tion because she could not show that she was objectively qualified for the position of Captain. In the alternative, it analyzed the second and third prongs of the McDonnell Douglas framework and concluded that, even if Wesley were qualified, the Department had met its burden of producing a non-discriminatory justification for not promoting her, and Wesley had not shown that justification to be pretexted.[1]
Wesley urges this Court to overturn the district court’s award of summary judgment to the Department. Because we find that Wesley was qualified for the position of Captain, and produced evidence sufficient to support a jury finding that the Department’s proffered reasons for non-promotion were mere pretext, we reverse the district court’s grant of summary judgment and remand the case for trial.
I.
Wesley’s work experience includes periods within several units of the Department. For most of the first five years of her career, beginning in 1994, Wesley worked in “operations.”[2] The Department defines operations positions as those on fire trucks, ambulances, and other front-line assignments. Wesley gained her operations experience on the crew of a fire truck.
In 2000, Wesley asked for and received an instructor assignment at the Department’s training academy. Over the following six years, she spent 20 months at the academy, 46 months in other administrative positions (including community relations and building inspection), and 27 additional months in operations. She is currently a Deputy Fire Marshal with the Department.[3]
The Department has established a three-stage process for promotion purposes. First, applicants who meet the minimum qualifications in terms of years of experience and education may take a written examination. The top scorers on this exam then attend an assessment center that tests practical skills. From the results of the assessment center, the human resources office prepares and certifies a list of “qualified” individuals and forwards it to the Fire Chief for final promotion decisions.
After receiving this certified list of candidates eligible for promotion, the Fire Chief convenes what is known as a roundtable. The roundtable is a discussion among senior Department personnel about the strengths and weaknesses of each candidate. Finally, the Fire Chief chooses the candidates who will be promoted.
After Wesley received high scores on the written exam and at the assessment center, she twice successfully secured a place on the certified list for the position of Captain. As a result, she was eligible for promotion essentially any time between 2001 and 2005. She was never promoted to Captain, however. According to deposition testimony and affidavits of the Fire Chief and other senior personnel, the Fire Chief decided not to promote Wesley be *778 cause participants at the roundtables voiced concerns about her job abilities, experience and performance. Wesley has produced competing accounts of the conversations and disputes that these concerns were raised.
Either before or during the roundtables, reviewing officers received a promotional sheet for each candidate on which they could note an applicant’s strengths and weaknesses. Unfortunately, no completed promotional sheets pertaining to Wesley are available for review as the Department destroyed them, an act Wesley contends violated Title VII and EEOC record-retention regulations.[4] See 42 U.S.C. § 2000e-8 (c), 29 C.F.R. § 1602.31.6.
II.
We review the district court’s grant of summary judgment de novo. Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 283 (4th Cir.2004). In doing so, we must construe the evidence and any inferences in the light most favorable to Wesley, the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
III.
The district court granted summary judgment to the Department on two grounds. First, it held that Wesley had failed to prove a prima facie case of discrimination; alternatively, it found that she had failed to rebut the Department’s proffered non-discriminatory reasons for not promoting her. We address each finding in turn.
A.
The district court found that Wesley failed to produce and forecast sufficient evidence to prove she was qualified for the position of Captain. Following a review of the record in the light most favorable to Wesley, we conclude otherwise.
Under the McDonnell Douglas framework, [a plaintiff] can establish a prima facie case by showing that (1) she is a member of a protected group, (2) she applied for the position in question, (3) she was qualified for that position, and (4) the defendants rejected her application under circumstances that give rise to an inference of unlawful discrimination.
Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 268 (4th Cir.2005). Only the third requirement, qualification, is at issue in this case. As an African-American female, Wesley is a member of a protected group, and she applied for promotion to Captain through the proper Department procedures. Previously, we have held that the fourth element, “an inference of unlawful discrimination,” is satisfied where a position is filled by an applicant outside the protected class. Carter v. Ball, 33 F.3d 450, 455 (4th Cir.1994). In this case, several white male firefighters were promoted to Captain instead of Wesley.
The Supreme Court has characterized a plaintiffs initial burden in a Title VII case under McDonnell Douglas as “not onerous.” Tex. Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Accordingly, we have described the threshold as “relatively mod *779 est,” Bryant v. Aiken Reg’l Med. Ctrs., Inc., 333 F.3d 536, 545 (4th Cir.2003)(internal quotations and citations omitted), and as a “relatively easy test” that may be satisfied even when there is “no clear-cut indication that race played a part in choosing the successful applicant.” Young v. Lehman, 748 F.2d 194, 197 (4th Cir.1984).
Wesley urges this Court to adopt a bright-line rule preventing employers from using subjective qualifications in establishing the requirements of a job. Several of our sister circuits agree with this limitation. See, e.g., Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 769 (11th Cir.2005); Johnson v. Louisiana, 351 F.3d 616, 622 (5th Cir.2003); Wexler v. White’s Fine Furniture, 317 F.3d 564, 575 (6th Cir.2003)(en banc); Jayasinghe v. Bethlehem Steel Corp., 760 F.2d 132, 135 (7th Cir.1985); Burrus v. United Tel. Co. of Kan., Inc., 683 F.2d 339, 342 (10th Cir.1982); Lynn v. Regents of U. of Cal., 656 F.2d 1337 (9th Cir.1981).
In contrast, the Third Circuit, in Fowle v. C & C Cola, 868 F.2d 59 (3d Cir.1989), has held that a bright-line test is undesirable and that, in certain contexts, “there could be situations where subjective qualifications could be considered as part of the prima facie case.” Id. at 64.
We need not decide this question here. Even under the more flexible holding of Fowle, subjective evidence is appropriate only in exceptional cases, such as where no objective facts are available or appropriate. Id. Here, there is sufficient objective evidence in the record to analyze Wesley’s qualifications for the position of Captain.
By all accounts, Wesley met the minimum objective criteria to be eligible for promotion to the rank of Captain. She was eligible to take, and passed, the written test and assessment center in 2001 and 2003. As a result, the Department rated her “more than qualified” and put her on the certified lists from which the Fire Chief could select applicants for promotion.
Wesley contends that these factors deem her qualified for the purpose of establishing her prima facie case. The Department, on the other hand, considers these factors merely a preliminary step, and argues that, to be truly qualified, an applicant had to demonstrate several other qualities. In support of its argument, the Department points out' that the position description for Captain set forth several qualifications beyond the testing hurdles Wesley successfully passed. These included “considerable experience in the fire department,” “considerable knowledge” of Department practices, “[flnterpersonal skills,” and “[p]roblem solving skill[s].”
Some of these factors are at least partially duplicative of the threshold requirements for taking the Captain’s exam. “Considerable experience,” for example, is reflected in the minimum years of service required to sit for the test, while “considerable knowledge” and “problem solving skills” are indicated by an applicant’s success on the written and assessment center portions of the promotional process. “Interpersonal skills” is a vague and subjective criterion, perhaps best measured by an applicant’s standing in the eyes of her peers, supervisors and subordinates; the record includes multiple instances of Wesley’s superiors praising her interactions with both coworkers and the public.
In addition to her success in the testing stages, Wesley gained generally positive performance reviews.[5] She also served as *780 an acting captain on numerous occasions, apparently without incident, thus demonstrating she could in fact perform the duties required of the position.
Wesley’s applications failed only at the roundtable stage. Although the Fire Chief and other Department personnel claim that decisions at that point were made on various objective and subjective factors related to Wesley’s job performance and qualifications, it appears the Fire Chiefs decision at this point was entirely discretionary. Under the Department’s theory of qualification, only those persons actually selected by the Fire Chief would appear to be qualified applicants. Such a rule would forestall nearly any plaintiff from meeting her initial burden under the McDonnell Douglas burden-shifting regime.
The Department’s evidence on this issue consists largely of the deposition testimony of the Fire Chief and other management personnel regarding Wesley’s experience and job performance. The Chief and his subordinates repeatedly allege that concerns were raised, primarily at the roundtable stage, about Wesley’s performance at the training academy and the relatively minimal time she had spent in operations positions. Unfortunately, because the Department failed to preserve the records of the roundtable discussions, little documentation of these alleged conversations survives.
Nevertheless, Wesley has proven her prima facie case even if we consider the affidavits and deposition testimony related to the roundtable discussions. At this stage, she need not establish that she was the most qualified person for the position, only that she met the job requirements and thus was qualified for the position of Captain. Her written reviews from her time as a trainer and her other documented evaluations were positive. The affidavits and deposition testimony of the Fire Chief and other personnel related to the roundtable discussions are only evidence that management had concerns about her skills and performance. These issues are relevant at later stages of the analysis, but not to whether she actually possessed the requisite qualifications.
Therefore, we hold that Wesley’s positive performance reviews, her documented achievements as a firefighter, and her success on the objective phases of the promotional process are sufficient to establish that she was qualified for the position of Captain.[6]
B.
After determining that Wesley was unqualified for the position of Captain, the district court alternatively analyzed the two remaining prongs of the McDonnell Douglas burden-shifting framework and concluded that Wesley could not show that the Department’s non-discriminatory reasons were mere pretext.
[T]he plaintiff — once the employer produces sufficient evidence to support a nondiseriminatory explanation for its decision — must be afforded the “opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.”
Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)(quoting Burdine, 450 U.S. at 253, 101 S.Ct. 1089).
The Department offers two main justifications for the Fire Chiefs failure to pro *781 mote Wesley: she lacked the experience and capabilities of many other candidates who were promoted; and the Fire Chiefs senior officers informed him of problems with Wesley’s performance. Although these justifications are sufficiently plausible on their face to meet the Department’s burden under McDonnell Douglas, we are persuaded that Wesley has raised genuine questions of material fact about whether they are mere pretext for discrimination.
1.
While the Department did establish that Wesley had relatively few total years in operations when compared to some other applicants, a current Department senior officer testified that a firefighter’s actual field experience could vary depending on what job within operations she held, and that Wesley had at least as much real firefighting experience as did white males promoted by the Fire Chief. Wesley also has established that the training academy position she held, which the Department now discounts as non-operations experience, was a traditional stepping-stone to Captain.[7]
As evidence that its concern about Wesley’s limited field experience was addressed before the litigation, the Department points to communications attempting to convince Wesley to leave the teaching position for operations. Yet it was entirely reasonable for Wesley to remain in the training academy for two reasons. First, as noted above, she had seen many employees use the training academy post as a finishing school for promotion to Captain. Second, the request to remove Wesley from the training academy came only a few weeks before she was to begin working with a new class of recruits. Her supervisor at the academy strongly opposed her removal. Furthermore, after she completed the course, Wesley did in fact return to an operations position.
The Fire Chief makes much of certain qualifications and certifications held by various applicants for the Captain position. Specifically, he asserts that he highly valued Advanced Life Support (“ALS”) certification when making promotion decisions. He also cites Hazardous Materials (“haz-mat”) and technical rescue certifications. Wesley had none of these certifications. Yet participants of the roundtables dispute whether the Fire Chief ever discussed these certifications during these sessions, and whether they constituted a major factor in promotional decisions. J.A. at 228. Notably, the department failed to promote not only Wesley, but also the other two women on the 2003 qualified list, even though they both held the ALS certification. Especially where the Department has destroyed any records of these conversations, it was improper for the district court on summary judgment to credit the affidavits and testimony of some participants (namely the Fire Chief) over other contradictory accounts.
Furthermore, if the Fire Chiefs version of his decision is to be believed, he valued every certification or qualification that Wesley did not have, and discounted any factor on which she might have been viewed favorably. The Department highlights that one applicant had experience running his own business, and that another had worked on an inter-jurisdictional task force. Yet the Fix'e Chief allegedly gave no or little weight to leadership training, public relations roles, or acting captain experience, all of which Wesley possessed. *782 Importantly, not every Captain within the Department is assigned to drive a fire truck or an ambulance. The job description in the position announcement lists “supervisory, administrative and technical work in the Fire Department.” Indeed, the recruiting position that Wesley held, and which the Department now criticizes as non-operational experience, was elevated to a Captain-level post after Wesley moved on to other assignments.
The purported importance of some marginally relevant qualifications and disregard of other, seemingly pertinent aspects of Wesley’s career raise a genuine question of material fact as to whether the overall set of criteria now set forth is an accurate picture of the decisional framework in place at the time. See DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir.1998)(“[I]t is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason. ”)(emphasis added).
2.
The Department’s assertion that the Fire Chief was concerned with Wesley’s “uneven” performance is similarly suspect. The Department initially asserted that negative items in Wesley’s personnel file, arising in 1997 and 1999, were relevant to the Fire Chiefs decision not to promote her to Captain.[8] Yet the Fire Chief himself testified that, while he knew of these issues, they did not influence his decision. This inconsistency suggests that, in responding to Wesley’s claims, the Department may not merely have been explaining the Fire Chiefs decision-making process, but instead searching Wesley’s file for any damaging piece of information that could conceivably have justified the Fire Chiefs decisions. See E.E.O.C. v. Sears Roebuck and Co., 243 F.3d 846, 852-53 (2001) (inconsistent reasons and post-hoc rationalizations are “probative of pretext”).
The Department’s shifting explanations continued to the very close of the case before the district court. In its reply brief on summary judgment, the Department, for the first time, produced an affidavit from a training academy recruit alleging first-hand knowledge that Wesley slept at the academy when she was supposed to be supervising students — -an accusation Wesley strongly denies. Yet this affidavit does not purport to show that the recruit ever relayed this information either to the Fire Chief or to anyone who attended the roundtables; thus, it cannot be known whether this information was relevant to the Fire Chiefs state of mind at the time of his decisions. We also note again that the fire chief promoted one applicant to Captain despite a history that included an incident deemed a threat to patient life and which resulted in a forty-five day suspension. Clearly, performance and discipline issues were not always sufficient to deny promotion. We therefore conclude that a reasonable jury could find the Department’s proffer of these performance issues merely pretextual.[9]
*783 IV.
For the foregoing reasons, we hold that Wesley has established a prima facie case of discrimination, and has shown that genuine issues of material fact exist as to whether the Department’s proffered nondiscriminatory reasons for its decision not to promote her are mere pretext for discrimination.
Accordingly, we reverse the order of the district court granting summary judgment and remand the case for trial.[10]

REVERSED AND REMANDED.

. On appeal, the parlies do not dispute that the Fire Department met its burden of producing a non-discriminatoiy reason for its decision not to promote, as required under the second phase of the McDonnell Douglas burden-shifting regime. We agree.

. Wesley was out of operations for approximately seven months on maternity leave and subsequent light duly.

.The Department initially denied Wesley promotion to this post as well. After she raised the issue in her EEOC complaint, however, the Department promoted Wesley to the position; thus the initial denial is not at issue in this case.

. Wesley argues that the promotional sheets were "personnel or employment record[s] made or kept by a political jurisdiction,” which must be retained for two years and during the pendency of any charge of discrimination. 29 C.F.R. § 1602.31. We need not find that a violation of the recordkeeping law occurred to reach our decision in this case. However, the Department offers no argument against such a finding beyond claiming that Wesley did not raise the issue in the district court and thus waived it on appeal. Wesley notes that she raised the issue in her memorandum opposing summary judgment.

. The record indicates that Wesley had a series of minor vehicle accidents, including one in 2002 resulting in a disciplinary letter and the loss of eight hours of vacation time. Yet the Department can hardly argue that such reprimands disqualify a firefighter from promotion: in 2002, the Department promoted an employee to Captain who had been sus *780 pended for forty-five days, barred from ever applying for promotion to other firefighter positions, and told that his actions at an accident scene endangered a patient's life.

. We do not understand the dissent to disagree with the conclusion that Wesley met this initial burden of showing that she was objectively qualified.

. During the relevant time period, at least seven male firefighters were promoted to Captain after serving at the training academy. All applicants with instructor experience were promoted in 2003 except Wesley, another female applicant and a male who had been cited for driving under the influence.

. Apparently Wesley had some difficulty refreshing her skills after time on maternity leave in 1997, though subsequent reviews indicate no such problems. In 1999, she was involved in a minor vehicle accident.

. The dissent urges that we not substitute this Court’s judgment for that of the employer. However, we must similarly not invade the province of the jury and weigh the credibility of witnesses and evidence on contested issues of fact. We make no ultimate judgment on whether the reasons offered by the Department are pretextual. Instead, reviewing the limited and contradictory evidence in the record in the light most favorable to Wesley, we only hold that a reasonable jury could reach such a conclusion. Unlike this Court or the district court on summary judgment, a juiy will be able to hear and see the testimony of witnesses, presumably including Wesley and Department officers. Additionally, the *783 jury may lay the dueling evidence side by side and find some of it more credible and weighty. We are bound not to do so here. Although the dissent considers Wesley's case "regrettably weak,” she has proffered substantial evidence (including the Department's own records, and affidavits from several senior officers) contradicting the recollections of the Fire Chief and others. Together, they are more than sufficient to support a jury finding of pretext.

. Because we reverse the district court's order of summary judgment and remand for trial, we need not address that court's decision to deny Wesley’s motion to strike certain affidavits that the Department attached to its reply brief on summary judgment.