**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-2431**

JIMMY A. HAYNES,

             Plaintiff – Appellant,

      v.

WASTE CONNECTIONS, INC.; WASTE CONNECTIONS OF SOUTH
CAROLINA, INC.,

             Defendants – Appellees,

      and

DOES 1 THROUGH 25,

             Defendants.

Appeal from the United States District Court for the District of South Carolina, at
Spartanburg.  Henry M. Herlong, Jr., Senior District Judge.  (7:16-cv-01922-HMH)

Argued:  January 31, 2019                          Decided:  April 23, 2019

Before GREGORY, Chief Judge, THACKER, and HARRIS, Circuit Judges.

Reversed and remanded by published opinion.  Chief Judge Gregory wrote the opinion,
in which Judge Thacker and Judge Harris joined.

**ARGUED:**  Alicia Penn, Marie Hanewinckel, UNIVERSITY OF VIRGINIA SCHOOL
OF LAW, Charlottesville, Virginia, for Appellant.    Kurt N. Peterson, LITTLER

MENDELSON PC, Atlanta, Georgia, for Appellees. **ON BRIEF:** Stephen L. Braga, Thomas Howard, Third Year Law Student, Appellate Litigation Clinic, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Charlottesville, Virginia, for Appellant.

GREGORY, Chief Judge:

This appeal arises from Appellant Jimmy Haynes's action for employment discrimination. Haynes, who is black, claims that his former employer, Appellee Waste Connections of South Carolina, Inc., a subsidiary of Waste Connections, Inc. ("WCI"), unlawfully terminated his employment because of his race and retaliated against him in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. The district court granted summary judgment in favor of WCI on all of Haynes's claims after finding that Haynes had failed to establish an appropriate comparator and to produce evidence of pretext. Because both of these determinations were in error, we reverse the district court's grant of summary judgment and remand the case for further proceedings.

I.

James Fountain, a white man, hired Haynes to work for WCI in 2006 and supervised Haynes for the duration of his employment. During his employment, Haynes drove a large, multi-ton "front-end loader" truck in Duncan, South Carolina, to pick up trash from WCI's customers.

The following events led to the termination of Haynes's employment. On October 6, 2015, Haynes arrived at work around midnight, which was two hours before his normal start time. Haynes represented in an affidavit that he went in at that time because he wanted to finish his work early to have lunch with his wife and play basketball. When Haynes arrived at work, company mechanics informed him that his regular truck was down for repairs but that they could have a replacement truck ready in five minutes.

3

According to WCI, mechanics heard Haynes respond, "I'm going home; I'm leaving." In his affidavit, Haynes explained that he was sick with a stomach virus and that he told another driver that he was sick and unable to work. Haynes's wife also testified that Haynes was ill with a stomach virus on October 6 and 7. As he was leaving, approximately 45 minutes before the normal start of his shift, Haynes sent the following text to Fountain: "Good morning, Jim. I came down with a stomach virus and I will not be working today. If u have any question let me know." J.A. 300. Fountain did not see this text until 3:30 a.m. on October 7 and had to scramble to find someone to cover Haynes's route. Around a quarter of the customers along the route did not get their waste needs serviced as a result. Haynes called Fountain at 3:00 p.m. on October 7 and reported that he was feeling much better and would return to work the next day.

Before receiving Haynes's call, Fountain spoke with the company mechanics. According to WCI, the mechanics said that Haynes seemed frustrated with the delay to repair his normal truck and said, "Forget this" or "F*** this." After speaking with the mechanics, Fountain met with the district manager and human resources manager and decided that Haynes's employment should be terminated. On October 8, 2015, Fountain and the district manager informed Haynes that his employment was being terminated for job abandonment.

Though Fountain did not mention any reason aside from job abandonment as the basis for the termination, WCI now asserts that prior to the incident on October 7, 2015, Haynes committed three infractions. First, according to Fountain's affidavit, on June 22,

4

2015, Haynes drove away without removing a fuel pump from a truck. Haynes, however, states that he does not remember whether he was involved in such an incident.

Second, on August 11, 2015, Haynes undershot a driveway, and as a result, his truck became stuck. According to Haynes, the weather at the time was rainy and foggy, and Fountain stated that the incident was not that bad when he arrived at the scene. *Id.* Highway Patrol did not cite Haynes for the incident. As a result of this incident, Fountain and the district manager issued a written warning to Haynes for "poor performance." According to Fountain, Haynes was "indignant, dismissive, and combatant" in response to the warning and refused to sign the written warning to acknowledge that he had received it. J.A. 298.

Third and finally, on August 25, 2015, WCI's Drive Cam system, which records drivers' conduct when it is triggered by certain events, including hard braking and sudden stops, recorded Haynes with one hand on the steering wheel and the other hand touching his cellphone. Haynes received a second written warning and one-day suspension as a result of the incident. Haynes testified that he was stopped at a red light and looked at his phone to see the time and that he was told that he could use his phone while the truck was stopped. According to Haynes, when he returned from the one-day suspension, a clock had been installed in the assigned work truck.

Despite these infractions, Haynes asserts that he met with Fountain to discuss his upcoming annual performance review on September 25, 2015, and that Fountain told him that "everything looks good" and there was "nothing to worry about." J.A. 299.

5

II.

Haynes filed *pro se* an action against WCI under Title VII and § 1981. *Id.* WCI moved for summary judgment, arguing that Haynes was unable to establish a prima facie case of race discrimination and that even if he had, WCI had offered a legitimate, nondiscriminatory reason for the termination, *i.e.*, "poor performance and walking off the job without valid reason or notice." The district court dismissed Haynes's action on summary judgment. The district court, adopting the report and recommendation of the magistrate judge, found that Haynes had failed to establish a valid comparator and that even if he had, Haynes had failed to show pretext. Haynes's post-judgment filing, which was construed as a Rule 59(e) motion, was denied by the district court. Haynes timely appealed.

III.

We review an award of summary judgment *de novo*. *Adams v. Trs. of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 556 (4th Cir. 2011). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering the matter on appeal, we construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in his favor. *See Adams*, 640 F.3d at 556; *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013). However, we do not weigh evidence or make credibility determinations. *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (internal quotations and citations omitted).

6

Where, as here, a plaintiff does not allege direct evidence of discrimination, a plaintiff asserting discriminatory treatment under Title VII may avoid summary judgment by proceeding under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a discriminatory termination claim, a plaintiff must make a prima facie showing that: (1) he was a member of a protected class; (2) he was satisfactorily performing his job at the time of the termination; (3) he was terminated from his employment; and (4) the prohibited conduct in which he engaged was comparable in seriousness to misconduct of other employees outside the protected class who received less severe discipline. *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011). If an employee meets his burden to establish a prima facie case, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* at 336. If the employer meets this burden of production, the employee must then demonstrate that the defendant's proffered reason is pretextual. *Id.*

IV.

The district court dismissed Haynes's complaint on summary judgment after adopting the magistrate judge's recommendation that Haynes had failed to establish an appropriate comparator and to produce evidence of pretext. WCI also argues on appeal that Haynes has failed to demonstrate that he was satisfactorily performing his job at the time of the termination. We address each of these issues in turn and determine that

7

Haynes has pointed to sufficient disputes of fact in the record to establish a prima facie case of discriminatory treatment under Title VII.

A.

Turning first to the issue of an appropriate comparator, this Court has emphasized that a comparison between similar employees "will never involve precisely the same set of work-related offenses occurring over the same period of time and under the same sets of circumstances." *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993). Rather, to establish a valid comparator, the plaintiff must produce evidence that the plaintiff and comparator "dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)) (alterations in original).

Haynes has produced evidence that Joe Hicks, a white employee also supervised by Fountain, had several workplace infractions, including twice using a cellphone while driving, driving while distracted, and responding to a traffic situation late. Haynes also pointed to evidence, which appears undisputed, that Hicks became angry and yelled at Fountain before quitting his job. Yet, Hicks was permitted to return to his job, and Haynes, who had fewer infractions and did not yell at his supervisor, was not permitted to return to his job and instead had his employment terminated. Considering this evidence, a reasonable fact finder could conclude that Hicks and Haynes were appropriate comparators, because they dealt with the same supervisor, were subject to the same

8

standards, and engaged in similar conduct. *See Cook*, 988 F.2d at 511. Indeed, it appears that Hicks, who had more infractions and was less respectful to his superiors, may have engaged in more egregious conduct, yet received more favorable treatment.

Contrary to WCI's argument, the nature of Haynes's previous infractions does not render Hicks an inappropriate comparator. WCI argues in particular that Haynes and Hicks are not proper comparators, because Haynes's infractions caused damage and Hicks's did not. As an initial matter, disputes of fact in the record call into question WCI's assertion that Haynes's infractions caused damage to property. For example, Haynes points to evidence that the police officer did not issue any citation as a result of his undershooting a driveway because there was no damage and that Fountain himself said the incident was not that bad. Haynes also asserts that he does not believe he was involved in an incident involving a fuel pump. J.A. 96.[1] Even assuming that Haynes's infractions did cause damage, this fact alone would not necessarily end the comparator analysis. Especially given the dangerous nature of Hicks's offenses, a factfinder could reasonably determine that the two were proper comparators.

---

[1] We note that WCI mistakenly relies on our decision in *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980), to argue that it does not matter whether Haynes was actually involved in the alleged infractions or if they caused damage as long as Fountain believed as such. Such a broad reading of *Flax* is incorrect. *Flax* merely stands for the uncontroversial proposition that an employee cannot create a dispute of fact simply by testifying that he was performing satisfactorily without providing any additional evidence. Here, the district court was not allowed to ignore disputes of fact regarding Haynes's disciplinary record simply because WCI claimed it believed certain facts to be true at the time of the termination.

Nor was it appropriate for the district court to conclude that Hicks and Haynes were improper comparators because Hicks "notified his employer that he was resigning from his job prior to leaving the premises," while Haynes "left the premises and abandoned his job without speaking with management." J.A. 374–75. As an initial matter, the record indicates that Haynes did in fact notify his supervisor via text before leaving the premises. While WCI claims that this was in violation of company policy, Haynes has asserted in his affidavit that this was the method he had always used to communicate with Fountain and that this custom had never caused a problem in the past. It bears emphasizing, moreover, that Hicks did not simply "notify" his employer that he was resigning. Indeed, the record indicates that Hicks yelled at his supervisor over a customer service disagreement before quitting his job–behavior that to a jury might seem far more egregious than Haynes's text to his supervisor that he was feeling unwell and would therefore not be able to work his normal shift. This evidence also undermines WCI's argument that Haynes had a more "dismissive" attitude than Hicks. Although WCI contends that its own investigation suggested that Haynes left work because he was frustrated that his truck was not ready while Hicks quit for a "seemingly honest" reason, this contention simply results in another dispute of fact, which must be read in the light most favorable to the non-moving party at this stage.

Taken as a whole, the evidence in the record could permit a reasonable factfinder to conclude that Haynes and Hicks are proper comparators. Because Haynes is similar to Hicks in all relevant respects but was treated differently from Hicks, a white employee, the district court erred in holding that Haynes had failed to establish a proper comparator.

10

B.

Although the district court granted summary judgment solely on the basis of its comparator and pretext findings, WCI also argues on appeal that Haynes has failed to demonstrate that he was performing his job satisfactorily at the time of his termination. We disagree. Such a showing of satisfactory performance does not require the plaintiff to show that he was a perfect or model employee. Rather, a plaintiff must show only that he was qualified for the job and that he was meeting his employer's legitimate expectations. *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 515–16 (4th Cir. 2006). Haynes submitted evidence that Fountain told him in September 2015 (mere weeks before his termination) that "everything looks good" and there was "nothing to worry about" regarding his upcoming performance review. J.A. 369. Haynes also received bonuses for the period in question. Such evidence raises the reasonable inference–which must be drawn in Haynes's favor at this stage–that he was performing at a satisfactory level. Although WCI contends that Haynes could have been given a larger bonus if he had performed better, Haynes does not have to prove that he was a perfect employee, only that he was performing satisfactorily. Additionally, although WCI argues that Haynes failed to perform satisfactorily by sending a text to Fountain in violation of company policy, a dispute of fact would still exist as to whether Haynes met his employer's legitimate expectations at that time, because evidence in the record suggests that Haynes routinely communicated with Fountain via text. Thus, Haynes successfully presented a prima facie case of discrimination, and the district court erred in holding otherwise.

11

## C.

The district court likewise erred in determining that Haynes had not shown any evidence of pretext. In order to show pretext, a plaintiff may show that an employer's proffered nondiscriminatory reasons for the termination are inconsistent over time, false, or based on mistakes of fact. *E.E.O.C. v. Sears Roebuck & Co.*, 243 F.3d 846, 852–53 (4th Cir. 2001). Once the plaintiff offers such circumstantial evidence, the case must be decided by a trier of fact and cannot be resolved on summary judgment. *Id.* This Court has allowed an inference of pretext in cases where an employer has made substantial changes to its proffered reason for discharge over time. *Id.*; *Wesley v. Arlington Cnty.*, 354 F. App'x 775, 782 (4th Cir. 2009).

Here, because Haynes has produced evidence that WCI's reason for his termination has changed substantially over time, he has presented sufficient evidence of pretext. Perhaps most importantly, WCI now asserts for the first time during this litigation an entirely different reason for the termination than was offered initially: Haynes's poor attitude. Additionally, when Haynes's employment was terminated, Fountain told him that he had met with the human resources department and that the reason for the termination was "job abandonment." J.A. 201. As Haynes points out, WCI's own policy defines job abandonment as "three days, no call and no show," which is inconsistent with Haynes's behavior on October 7. Haynes had in fact texted and called before returning to work after only one day. The magistrate judge's recommendation, which was later adopted by the district court, discounted this inconsistency, holding that Fountain did not mean the job abandonment policy but was

12

instead apparently referring to his own definition of job abandonment, *i.e.*, "coming in and leaving." J.A. 311. Given that Fountain had consulted with the human resources department, a genuine dispute of fact exists as to whether it was reasonable for Fountain to use that specific terminology without conforming to WCI's own definition of "job abandonment" or whether this represents an inconsistency and evidence of pretext. Haynes's final termination paperwork did not include "job abandonment" as a reason and instead simply stated "violation of rules," though it is unclear which rules the termination paperwork is referring to–rules created by Fountain or as defined in WCI's policy. J.A. 34.[2]

While an employer is certainly permitted to expand on its original reason for a termination, such evidence of substantial changes to WCI's proffered reason for the termination permits an inference of pretext. *See Sears Roebuck & Co.*, 243 F.3d at 852–53. Thus, because Haynes has pointed to sufficient evidence to create a genuine issue of material fact as to whether WCI's proffered reason for the termination is pretext, summary judgment on this basis would be in error.[3]

---

[2] Haynes also notes that the unemployment records generated by South Carolina listed the reason for termination as "absenteeism," but that absenteeism was never a problem for him at the time of the termination. J.A. 202. While WCI correctly notes that it did not provide that reason in that state-generated document, WCI nevertheless had notice of the designation on the unemployment records and could have corrected it but did not. J.A. 312.

[3] We note that Haynes argues that the district court erred in failing to address his mixed-motive theory that race was a motivating factor in his discharge. Because the

(Continued)

13

V.

Haynes has presented sufficient evidence to establish a prima facie case of racial discrimination and to demonstrate pretext. The district court, therefore, erred in granting summary judgment in favor of WCI. Accordingly, the district court's decision is reversed and remanded for further proceedings.

*REVERSED AND REMANDED*

district court did not find any evidence of racial discrimination, it could be understood from the opinion that the district court found no evidence that race was a motivating factor for the termination. On remand, however, a factfinder would be free to find that race was a motivating factor in Fountain's decision to terminate Haynes–even if it was not the sole factor. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 242 (1989).

14