**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 25-1065**

———————

ROBYN BOMAR; LETINA HALL; JONISE STALLINGS; SHAKERA ADKINS,

Plaintiffs – Appellants,

v.

BOARD OF EDUCATION OF HARFORD COUNTY; SEAN BULSON,

Defendants – Appellees,

and

STACEY GERRINGER,

Defendant.

———————

Appeal from the United States District Court for the District of Maryland, at Baltimore. Lydia Kay Griggsby, U.S. District Judge.  (1:21-cv-00870-LKG)

———————

Argued:  October 24, 2025                    Decided:  April 16, 2026

———————

Before NIEMEYER, GREGORY, and BERNER, Circuit Judges.

———————

Affirmed by unpublished per curiam opinion.

———————

**ARGUED:** Corlie McCormick, Jr., MCCORMICK LAW FIRM, LLC, Washington, D.C., for Appellants.  Adam Elliot Konstas, PESSIN KATZ LAW, P.A., Towson, Maryland, for Appellee.  **ON BRIEF:** Edmund J. O'Meally, PESSIN KATZ LAW, P.A., Towson,

Maryland, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Appellants Robyn Bomar, Letina Hall, Jonise Stallings, and Shakera Adkins served as assistant principals in Harford County, Maryland Public Schools until they were reassigned pursuant to a county-wide reduction in force. Believing that their non-selection was unlawful, Appellants filed suit against the Board of Education of Harford County (School Board) and Superintendent of Harford County Public Schools Dr. Sean Bulson.

Appellants, all Black women over the age of forty, allege that they were demoted because of their race, sex, and age. They also claim that the reduction in force procedure was unlawful because it disproportionately impacted Black women. They further allege that the School Board retaliated against them for raising concerns about this alleged unlawful discrimination. Hall and Adkins assert that Harford County retaliated against them because they took time off from work on protected medical leave. Finally, Appellants argue that Superintendent Bulson violated their constitutional rights.

Following discovery, the district court granted summary judgment to the School Board and to Superintendent Bulson. On appeal, Appellants argue that summary judgment was improperly granted because genuine issues of material fact remain regarding whether the reasons given by the School Board and Superintendent Bulson for their various employment actions were pretextual. We disagree. Appellants failed to produce evidence upon which a reasonable jury could find the School Board's reasons pretextual. Nor have Appellants carried their burden to propose an alternative mechanism for a reduction in force that would adequately serve the School Board's legitimate business necessities. Finally, Appellants failed to carry their burden to make out a *prima facie* case in support of

3

their remaining retaliation claims. Accordingly, we affirm in full the ruling of the district court.

## I.   Factual Background

We present the facts in the light most favorable to the nonmoving parties, here the former assistant principals, as this is a review of an award of summary judgment. *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223 (4th Cir. 2019).

## A.   2019 Reassignment Plan

Dr. Sean Bulson became superintendent of Harford County Public Schools in 2018. Not long after assuming this role, Superintendent Bulson learned that the school system was facing a budget deficit, which he decided to address by significantly reducing the number of administrative staff, including assistant principals. After discussions with members of the School Board staff regarding previous procedures for reductions in force (RIFs), Superintendent Bulson opted to create a new procedure, one aimed at better evaluating the employees and that would provide supervisors more of a say regarding which employees would retain their positions.

To achieve these goals, Superintendent Bulson, in consultation with School Board officials, developed a new RIF procedure, which we will refer to as "the 2019 Reassignment Plan." Under the 2019 Reassignment Plan, all current assistant principals interested in continuing to serve in their positions were required to apply anew. The application process included submitting a resume and recorded video and written responses

4

to uniform interview questions. The process also required applicants to submit references from their current immediate supervisors, which were to follow a standardized format. Each applicant was asked to specify whether she wished to be considered for an assistant principal position at the elementary level or the secondary (middle school to high school) level. School principals were then asked to review and score each applicant's interview responses on a scale of one to five. All told, thirty-three individuals evaluated each elementary school level applicant, and nineteen individuals evaluated each secondary school level applicant. Thus, applicants for positions at the elementary school level could earn a maximum of 1,155 possible points, and secondary school level applicants could earn a maximum of 665 points.

The 2019 Reassignment Plan called for each school principal to provide two ranked lists of her top five applicants for the position of assistant principal at her school. The first list was to include the principal's top applicants should the School Board determine that the school would receive its own dedicated assistant principal. The second list was to include the principal's top five applicants should the school be required to share an assistant principal with another school. Superintendent Bulson and designated members of the School Board would then review the applicants' materials, the principals' scoring, the principals' preferred applicant lists, and the supervisor references to make final determinations as to applicants' placements. Applicants not initially selected to serve as assistant principals were to be placed in a pool of potential applicants to be considered when assistant principal positions become vacant in the future for a period of three years.

5

B.  Appellants' Applications

Beginning in February 2019, Robyn Bomar, Letina Hall, Jonise Stallings, and Shakera Adkins each submitted an application in accordance with the 2019 Reassignment Plan to remain in her assistant principal position. After the applications were assessed, none of the Appellants placed at or near the top of the applicant pool. None were selected.

Robyn Bomar, Letina Hall, and Jonise Stallings applied to retain their positions as secondary school assistant principals. Bomar's recorded video and written responses earned her a total of 501 points, ranking her seventeenth out of fifty-three secondary school applicants. Hall's responses earned 436 points, ranking her forty-fifth, and Stallings's responses earned 360 points, ranking her fifty-second.

Bomar's immediate supervisor did not recommend that she be rehired, noting that Bomar had been repeatedly reprimanded. Although two principals included Bomar on their top five applicant lists, none listed her as their first choice. Hall's immediate supervisor recommended her "with reservations," and one principal listed her as fourth on one of his top five applicant lists. Although Stallings's supervisor recommended her for hire, she rated her as only "average" in six out of nine applicable categories. Stallings did not appear on any principal's top five applicant lists.

Shakera Adkins applied to retain her position as an elementary school assistant principal. Her recorded video and written responses earned 702 points, ranking her thirty-fifth out of thirty-nine elementary school applicants. Adkins's immediate supervisor gave her a "recommend with reservations" reference, and she was not included on a single principal's top five applicant list.

6

During the period when applications were being submitted and evaluated under the 2019 Reassignment Plan, both Hall and Adkins took time away from work for medical reasons.

In June 2019, Bomar, Hall, Stallings, and Adkins each received a letter notifying her that she would be placed in a different role in a Harford County public school. Although 101 applications to serve as assistant principal were submitted under the 2019 Reassignment Plan, Appellants were the only Black women over forty who had applied. Over 87% (88) of the applicants were white, over 11% (12) were Black, and the remaining 1% (1) was American Indian. Yet of the thirteen applicants not selected, approximately 30% (4) were Black and 70% (9) were white. At some point after the selection process had been completed, Superintendent Bulson met with School Board leaders to discuss concerns that had been raised about the fairness of the process.

### C.  Post-RIF Assistant Principal Openings

Later that summer and into the following year, several assistant principal positions became vacant in Harford County Public Schools. The first vacancy occurred at Aberdeen High School in August 2019. Superintendent Bulson and another member of the School Board reviewed candidates in the secondary assistant principal applicant pool. The Aberdeen High School principal initially selected Bomar as his first choice to serve as assistant principal at the school. Rather than placing Bomar into the position, however, the School Board directed the principal to submit additional names, and Bomar was ultimately not selected. The School Board asserts that the selected applicant was chosen because of

7

her strong math background, a quality the School Board believed was essential because Aberdeen High School has a specialized math and science program. The School Board also claims that the successful applicant was selected because she already had familiarity with Aberdeen High School's families and community.

Additional assistant principal positions opened up during the spring and summer of 2020. Neither Hall nor Adkins were considered for these positions, however, despite having been informed that they would remain in the applicant pool for three years following their earlier non-selection. Hall and Adkins were similarly excluded from consideration during a December 2021 vacancy.

## II.  Procedural Background

Bomar, Hall, Stallings, and Adkins each timely submitted an administrative charge with the Maryland Commission on Civil Rights (MCCR) and the Equal Employment Opportunity Commission (EEOC). Each alleged that she had been the subject of unlawful discrimination and retaliation on the basis of her race, sex, and age.

In addition to these common claims, three of the four Appellants also raised claims unique to her circumstances. Bomar alleged in her charge that, on June 10, 2019, she had submitted a discrimination complaint with the United States Department of Education, and that the School Board became aware of her Department of Education complaint on July 19, 2019. Hall alleged in her charge that she was not selected to continue as an assistant principal both because of her race, sex, and age, and also that she was not selected in

retaliation for her having taken protected medical leave. Adkins also similarly alleged that she was not selected in retaliation for having taken protected medical leave.[1]

The MCCR and the EEOC declined to take action on Appellants' charges, and right-to-sue letters were issued to each of the Appellants. Appellants then filed this multi-plaintiff lawsuit in the United States District Court for the District of Maryland, alleging that the School Board discriminated against them on the basis of their race, sex, and age in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Title VII); the Maryland Fair Employment Practices Act, Md. Code. Ann., State Gov't § 20-601 *et seq.* (MFEPA); and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (ADEA).

Appellants based their discrimination claims both on a theory of disparate treatment and on a theory of disparate impact. Disparate treatment refers to discrimination that results from an employer treating some people less favorably than others because of, for example, their race or sex. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977). Disparate impact refers to discrimination that results from employment practices that, while neutral on their face, disproportionately impact one group of people more than another and cannot be justified by a legitimate business necessity. *Id.*

Appellants additionally allege that the School Board retaliated against them in violation of Title VII and MFEPA for their having objected to discriminatory treatment.

---

[1] Although Hall's and Adkins's charges contained allegations of disability discrimination and retaliation, these claims are absent from the operative complaint. These allegations are therefore not before us.

9

Appellants separately allege under 42 U.S.C. § 1983 that Superintendent Bulson violated their constitutional rights by subjecting them to unlawful discrimination. Finally, Hall and Adkins assert that the School Board retaliated against them for taking protected medical leave in violation of the Family Medical and Leave Act, 29 U.S.C. § 2611 *et seq*. (FMLA).

Following the close of discovery, the School Board and Superintendent Bulson moved for summary judgment on all of Appellants' claims. The district court granted the motion in its entirety. The district court determined that Appellants' race, sex, and age disparate treatment discrimination and retaliation claims failed. It reasoned that Appellants did not submit evidence sufficient to create a genuine factual dispute as to whether the School Board's proffered legitimate, non-discriminatory reasons for the Appellants' non-selection were pretextual. The district court also found that Appellants' disparate impact claims failed because they failed to identify an available, alternate business practice that would adequately serve the School Board's legitimate business necessities. The district court concluded that Appellants' Section 1983 claims failed for the same reasons as the discrimination claims under Title VII. Finally, the district court ruled that Hall and Adkins failed to produce evidence to show that the School Board's reasons for their non-selection after the 2019 Reassignment Plan were pretextual, or that there was a causal connection between their FMLA leaves and their non-selection for the subsequent assistant principal openings.

After the district court entered its order granting the School Board's motion for summary judgment, Appellants moved under Federal Rule of Civil Procedure 59(e) to alter

10

or amend judgment. The district court denied the motion, concluding that Appellants raised no new issues or arguments. Appellants timely appealed from both orders.

## III. Analysis

We review the district court's grant of summary judgment *de novo*. *Wannamaker-Amos v. Purem Novi, Inc.*, 126 F.4th 244, 254 (4th Cir. 2025). We construe all facts, and draw all reasonable inferences, in the light most favorable to the nonmoving party. *Shaw v. Foreman*, 59 F.4th 121, 129 (4th Cir. 2023). Summary judgment is not appropriate if genuine disputes of material fact remain. *Id.* In assessing claims of employment discrimination, we take care to consider the full context at issue rather than assessing any discrete incident on its own. *DeMasters v. Carilion Clinic*, 796 F.3d 409, 418 (4th Cir. 2015). Courts apply the Title VII framework when analyzing similar claims brought under Section 1983, MFEPA, ADEA, and FMLA. *See Gaines v. Balt. Police Dep't*, 657 F. Supp. 3d 708, 755–56 (D. Md. 2023) (applying Title VII case law to MFEPA claims as "[M]FEPA is the Maryland analogue to the federal employment discrimination statutes."); *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1314–15 (4th Cir. 1993) (applying Title VII framework to ADEA discrimination claims); *Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 550–51 (4th Cir. 2006) ("FMLA claims arising under the retaliation theory are analogous to those derived under Title VII and so are analyzed under the burden-shifting framework of *McDonnell Douglas Corp.*").

## A. Discrimination

11

We first discuss Appellants' claims that the School Board discriminated against them on the basis of their race, sex, and age in violation of Title VII, MFEPA and ADEA. Appellants' discrimination claims are based in theories of both disparate treatment and disparate impact.

i.    *Disparate Treatment*

An employer engages in disparate treatment discrimination when it treats some people less favorably because of a protected trait. *See Int'l Bhd. of Teamsters*, 431 U.S. at 335 n.15; *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609–10 (1993). "A plaintiff may prove discrimination through either of two methods: (1) direct evidence of discrimination, or (2) through the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny." *Wannamaker-Amos*, 126 F.4th at 255. The *McDonnell Douglas* framework requires the plaintiff first to make out a *prima facie* case of discrimination. *Id.* The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its allegedly discriminatory action. *Id.* "If the employer carries this burden, the plaintiff then must prove by a preponderance of the evidence that the neutral reasons offered by the employer 'were not its true reasons, but were a pretext for discrimination.'" *Id.* (quoting *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)).

We assume, without deciding, that Appellants successfully carried their burden to make out *prima facie* cases of disparate treatment discrimination. We advance, therefore, to the second step in the *McDonnell Douglas* framework to determine whether the School

12

Board articulated a legitimate, non-discriminatory reason for its failure to select Appellants for assistant principal positions. We conclude that it has.

The School Board maintains that Appellants were not selected because their applications fell short when compared to those of the other applicants under the 2019 Reassignment Plan. The selected applicants scored higher on the interviews, had better references, and/or were more highly ranked on principals' top five applicant lists. These proffered reasons meet the School Board's obligation at step two.

Appellants argue that the School Board failed to meet its burden to produce evidence that Appellants were not selected because of legitimate, nondiscriminatory reasons. They argue that the 2019 Reassignment Plan failed to include adequate safeguards to ensure the process was legitimate, and not arbitrary or discriminatory. This argument misunderstands the inquiry at this second step of the *McDonnell Douglas* framework. We must determine only whether the defendant "'clearly set forth, through the introduction of admissible evidence,' reasons for its actions which, *if believed by the trier of fact*, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07 (1993) (quoting *Tex. Dep't of Cmty. Affs.*, 450 U.S. at 255). This second step "is one of production, not persuasion[.]" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). Thus, the School Board needed only to proffer evidence to support its legitimate, nondiscriminatory reasons for not selecting Appellants as assistant principals. The School Board did so, pointing to the applicants' interview scores, applicants' immediate supervisor references, and principals'

13

top five applicant lists. We save our evaluation of whether these reasons are worthy of credence for the third step of the *McDonnell Douglas* framework.

Turning to the third and final step under *McDonnell Douglas*, "the burden shifts back to [Appellants] to produce evidence sufficient to create a material issue of fact as to whether [the employer's] alleged reason . . . was not its true reason, but rather a pretext for discrimination." *Wannamaker-Amos*, 126 F.4th at 257. Appellants may show that the School Board's reason is "unworthy of credence[,]" or they may "adduc[e] other forms of circumstantial evidence sufficiently probative of discrimination." *Id.* (quoting *Reeves*, 530 U.S. at 143).

Having carefully reviewed the record, we agree with the district court that Appellants failed to produce evidence sufficient to create a triable issue of fact as to whether the School Board's proffered reasons for not selecting them were pretextual. Because Appellants failed meet their burden at step three, we affirm the district court's grant of summary judgment to the School Board on Appellants' claims of disparate treatment.

## ii.    *Disparate Impact*

Appellants also allege that the implementation of the 2019 Reassignment Plan disparately impacted candidates who were Black women candidates because four out of the five Black women applicants were not selected.

Unlike claims of disparate treatment, disparate impact claims "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity."

14

*Int'l Bhd. of Teamsters*, 431 U.S. at 335 n.15. To establish a claim of disparate impact under Title VII, a plaintiff must establish that the "employer use[d] 'a particular employment practice that cause[d] a disparate impact on the basis of race, color, religion, sex, or national origin.'" *Ricci v. DeStefano*, 557 U.S. 557, 578 (2009) (quoting 42 U.S.C. § 2000e-2(k)(1)(A)(i)).

Where a plaintiff asserts a *prima facie* case of disparate impact discrimination, "[a]n employer may defend against liability by demonstrating that the practice is 'job related for the position in question and consistent with business necessity.'" *Id.* (quoting 42 U.S.C. § 2000e-2(k)(1)(A)(i)). A plaintiff can rebut the employer's defense "by showing that the employer refuses to adopt an available alternative employment practice that has less disparate impact and serves the employer's legitimate needs." *Id.*

Assuming, without deciding, that Appellants made out a *prima facie* case that the 2019 Reassignment Plan caused a disparate impact on the basis of race and sex, Appellants' claim still fails. The School Board put forward evidence that it implemented the 2019 Reassignment Plan to support legitimate business necessities, including ensuring that school principals were given an opportunity to provide input about which applicant was chosen to serve as the assistant principal at their school. Appellants put forward no available alternative employment practice that would have less disparate impact and still have served the School Board's legitimate necessities as required. We therefore affirm the district court's grant of summary judgment to the School Board on Appellants' claims of disparate impact.

15

B. <u>Retaliation</u>

Appellants further contend that the School Board retaliated against them after they complained that they had been subjected to unlawful discrimination. We affirm the district court's grant of summary judgment to the School Board on Appellants' retaliation claims, although on different grounds. We find that Appellants failed to proffer evidence sufficient to establish a genuine dispute of material fact that the School Board was aware of their protected activity prior to the alleged adverse employment actions.

Hall and Adkins also argue that the School Board retaliated against them because they had taken protected FMLA leave. We agree with the district court that Hall and Adkins failed to produce evidence sufficient to create a genuine issue of material fact as to whether the School Board's proffered reasons for the alleged adverse actions were pretextual.

We analyze Appellants' retaliation claims under the now familiar *McDonnell Douglas* framework. First, the plaintiff must establish a *prima facie* case by showing that she engaged in protected activity, that her employer took an adverse action against her, and that a causal relationship exists between the two. *See McDonnell Douglas*, 411 U.S. at 802; *Roberts v. Gestamp W. Va., LLC*, 45 F.4th 726, 738 (4th Cir. 2022) (applying *McDonnell Douglas* framework to FMLA retaliation claims); *Barreto v. SGT, Inc.*, 826 F. App'x 267, 271 (4th Cir. 2020) (applying *McDonnell Douglas* framework to MFEPA retaliation claims). In the context of employment retaliation claims, a plaintiff may establish causation "by 'show[ing] that the adverse act bears sufficient temporal proximity to the protected activity,' or by showing 'the existence of facts that suggest that the adverse action occurred because of the protected activity,' or a combination of the two." *Laurent-Workman v.*

16

*Wormuth*, 54 F.4th 201, 218–19 (4th Cir. 2022) (quoting *Smith v. CSRA*, 12 F.4th 396, 417 (4th Cir. 2021)).

Once a plaintiff establishes a *prima facie* case, the burden shifts to the employer "to show that its purportedly retaliatory action was in fact the result of a legitimate non-retaliatory reason." *Foster v. Univ. of Md. E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015). At the final step, the plaintiff must show that the employer's proffered reason is pretextual or unworthy of credence. *Reeves*, 530 U.S. at 143.

### i.    *Title VII & MFEPA Retaliation*

Appellants claim that the School Board retaliated against them in violation of Title VII and MFEPA because they filed formal charges of discrimination with the MCCR and the EEOC, and because they complained about the unlawful discrimination internally. Bomar further claims that the School Board retaliated against her because she filed a complaint with the U.S. Department of Education. These actions most certainly constitute protected activity. *See, e.g.*, 42 U.S.C. § 2000e-3(a). Appellants' retaliation claims fail as a matter of law, however, because Appellants did not produce evidence from which a reasonable jury could conclude that members of the School Board were aware of the protected activity at the time of the alleged adverse actions. Appellants therefore failed to establish a *prima facie* case of retaliation because there is insufficient evidence of a causal

17

relationship. We accordingly affirm the grant of summary judgment on their Title VII and MFEPA retaliation claims.

### ii.     *FMLA Retaliation*

We turn next to Hall's and Adkins's FMLA retaliation claims. Both claim that, because they took medical leave protected by the FMLA, the School Board did not select them to continue as assistant principals when they applied through the 2019 Reassignment Plan. They also claim the School Board retaliated against them by not including them in the applicant pool to be considered when subsequent assistant principal positions came open.

Hall and Adkins successfully made the *prima facie* showing for their FMLA retaliation claims in connection with the implementation of the 2019 Reassignment Plan. First, Hall and Adkins each took FMLA leave and thus engaged in protected activity. *Yashenko*, 446 F.3d at 551. Second, they both suffered adverse employment actions. Neither was selected to continue to serve as an assistant principal pursuant to the 2019 Reassignment Plan. Finally, their non-selection under the plan was sufficiently close in time to their protected medical leave to establish a *prima facie* causal link. Where a plaintiff relies on temporal proximity alone, the adverse employment action must have taken place close in time to the protected activity. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). That is the case here. Hall was on leave between April 24 and June 14, 2019. Adkins was on leave between March 19 and April 5, 2019. Both Hall and Adkins learned that they had not been selected shortly thereafter, at the latest, on June 10, 2019, by way of the reassignment letters.

18

Shifting the burden to the School Board to proffer legitimate, non-discriminatory business reasons for Hall and Adkins's non-selection, we find—as before—that the School Board met its burden. Other applicants performed better under the 2019 Reassignment Plan Finally, as before, viewing the facts in the light most favorable to Hall and Adkins, we conclude that they failed to produce evidence upon which a reasonable jury could conclude that the School Board's proffered reasons were pretextual. Thus, Hall's and Adkins's claims that their non-selection under the 2019 Reassignment Plan was retaliatory fail as a matter of law.

Hall and Adkins further claim that the School Board retaliated against them by excluding their names from the assistant principal applicant pool in June 2020 and December 2021. These claims fail at the first step of the *McDonnell Douglas* framework: Hall and Adkins cannot make a *prima facie* case of retaliation. Although they contend that they were excluded from the applicant pool because they took FMLA leave, Hall and Adkins's sole support for their retaliation claim is that the two events took place close in time. While "there is no 'bright-line rule' for temporal proximity," a lapse of several months, absent other evidence, will generally not suffice to create a causal inference. *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 127 (4th Cir. 2021) (quoting *King v. Pulaski Cnty. Sch. Bd.*, 195 F. Supp. 3d 873, 886 (W.D. Va. 2016)). Both Hall and Adkins's FMLA leave ended more than a year before they were first excluded from the applicant pool. This significant lapse of time cannot create an inference that there is a causal connection between a protected activity and an adverse employment action.

19

We therefore affirm the grant of summary judgment on Hall and Adkins's FMLA retaliation claims.

## C. Section 1983

Finally, we turn to Appellants' claims against Superintendent Bulson brought under 42 U.S.C. § 1983. The elements required to prevail on Section 1983 claims of employment discrimination are the same as those under Title VII. *See Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004). Thus, we affirm the district court's grant of summary judgment to Superintendent Bulson for the reasons we affirmed the grant of summary judgment to the School Board on Appellants' Title VII claims.

## IV. Conclusion

For the reasons explained above, we affirm the district court's order granting summary judgment to the School Board and Superintendent Bulson.

*AFFIRMED*